602 P.2d 807

**STATE of Arizona, Appellee,**

v.

**Frank James VALENCIA, Appellant.**

**No. 3989–2.**

Supreme Court of Arizona,
En Banc.

Oct. 15, 1979.

Rehearing Denied Nov. 27, 1979.

Robert K. Corbin, Atty. Gen. by William J. Schafer, III and Barbara A. Jarrett, Asst. Attys. Gen., Phoenix, for appellee.

Thomas G. Martin, Tucson, for appellant.

HAYS, Justice.

Defendant-appellant, Frank James Valencia, was adjudged guilty of murder in the first degree on April 13, 1977 and, after the requisite aggravation/mitigation hearing, was sentenced to death. Defendant appealed both the conviction and sentence. This court affirmed the conviction, but vacated the death sentence pursuant to *State v. Watson*, 120 Ariz. 441, 586 P.2d 1253 (1978), and remanded for resentencing. *State v. Valencia*, 121 Ariz. 191, 589 P.2d 434 (1979). Appellant again received the death penalty from which he now appeals.

One issue raised by the defendant concerns a conversation had by the trial judge in chambers with the brother of the victim, Sgt. Robert Olsen, a Tucson police officer. On March 12, 1979, the afternoon prior to the scheduled resentencing, defense counsel learned of this conversation. At the subsequent aggravation/mitigation hearing, in response to inquiry by defense counsel, the court noted for the record:

> I don't recall exactly when this happened, maybe two weeks ago. Robert Olsen came into my office, identified himself as [the victim's] brother and asked to speak to me. We went into my office whereup-

on he indicated that he was there to let me know what the family's feelings were about the possible sentence that was going to be imposed . . . .

> He indicated that the family's feelings were that the court should impose the death penalty. Sgt. Olsen also indicated that it was his feeling that the defendant was not there . . . simply to rob [the victim], and Mr. Olsen alluded to the rapes which defendant had been charged with and had been found guilty.

The judge further stated that he was noncommittal with Sgt. Olsen, indicating only that it was a difficult decision and that the court would consider all facets of the matter. The record also indicates that the court informed Sgt. Olsen that the only evidence of the defendant's intentions on the night of the homicide disclosed that the victim was shot while defendant held her at gunpoint and she quickly turned around.

Appellant contends that the trial judge, having talked with the victim's brother, should have disqualified himself from presiding over the resentencing hearing. We agree.

The ABA Code of Judicial Conduct, Canon 3(A)(4) indicates that a judge should ". . . neither initiate nor consider *ex parte* or other communications concerning a pending or impending proceeding." Moreover, Canon 2 mandates that a judge should avoid even the appearance of impropriety in all of his activities. *See also People v. District Court in and for Third Judicial District*, Colo., 560 P.2d 828 (1977); *Wiedemann v. Wiedemann*, 228 Minn. 174, 36 N.W.2d 810 (1949); *DeCamp v. Good Samaritan Hospital*, 66 A.D.2d 766, 410 N.Y. S.2d 671 (1978); *Chicago, Milwaukee, St. Paul & Pacific R.R. v. Washington State Human Rights Commission*, 87 Wash.2d 802, 557 P.2d 307 (1977). Such a rule is a requisite to the orderly administration of justice in any judicial system.

We note that A.R.S. § 13–703, which provides for a sentence of death, contains the following:

C. . . . Any information relevant to any of the mitigating circumstances set forth in subsection G of this section may be presented by either the prosecution or the defendant, regardless of its admissibility under the rules governing admission of evidence at criminal trials; *but the admissibility of information relevant to any of the aggravating circumstances set forth in subsection F of this section shall be governed by the rules governing the admission of evidence at criminal trials.* (Emphasis added.)

The foregoing highlights the sensitivity required in the receipt of information to be used in determining whether the supreme penalty should be imposed. We hesitate to rebuke the learned trial judge for a momentary lapse, but the fundamental rights of the defendant to a fair hearing have been impinged, and the spirit and letter of the statute above have not been followed.

■ The state urges that the manner in which defendant's counsel handled the matter amounted to a waiver of defendant's right to a change of judge. Defendant's counsel, after discussing the propriety of the in-chambers conference on the record, asked the judge to proceed to another issue which he had raised. The state would have us hold that defendant lost his right to a change of judge when he allowed the proceeding to continue without objection after learning of the cause for challenge. 17 A.R.S., Arizona Rules of Criminal Procedure, rule 10.4. In the face of the statute and the nature of the proceedings with which we are concerned, we cannot adopt this technical argument.

■ Although we have indicated that this matter will be returned for resentencing, there are two additional matters which we should address. At the second sentencing, the trial court, with strong objections from defendant's counsel, considered as an aggravating circumstance a rape conviction which had not been entered prior to the original sentencing hearing. The rape had, however, been committed prior to that hearing.

Defendant contends that the case of *North Carolina v. Pearce*, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969), renders the court's action unconstitutional because of the imposition of a more severe penalty. We find this argument difficult to follow. One death penalty can be no more severe than another. *Pearce, supra,* clearly does not apply here.

Defendant next urges that it is fundamentally unfair to allow the court to consider events which could not have been used had defendant not exercised his right of appeal.

Initially, in *North Carolina v. Pearce, supra,* the Supreme Court held that, in the context of a new trial, a judge is not constitutionally precluded from imposing upon a defendant a new sentence based on events occurring subsequent to the original trial that may newly illuminate the defendant's life, health, habits, conduct, and mental and moral propensities.

■ In addition, the purpose of an aggravation/mitigation hearing is to determine the character and propensities of the defendant. The punishment should fit the offender and not merely the crime. *Williams v. New York*, 337 U.S. 241, 69 S.Ct. 1079, 93 L.Ed. 1337 (1949). Revelation of subsequent lawless acts of violence would help to attain the objectives of the sentencing statute.

■ The final argument of the defendant which we should consider concerns a contention that the imposition of the death penalty on a 16-year-old is an abuse of discretion and cruel and unusual punishment. No authority is cited which supports this position. We readily agree that the age of the offender is an important consideration to the court in sentencing as shown in A.R.S. § 13–703. There is, however, no constitutional or statutory provision which prohibits the sentencing of a 16-year-old to death.

The sentence herein is set aside and this cause is remanded for resentencing before a judge other than the one who imposed sentence below.

142

CAMERON, C. J., STRUCKMEYER, V. C. J., and HOLOHAN and GORDON, JJ., concur.