659 P.2d 1

**STATE of Arizona, Appellee,**

v.

**Douglas Edward GRETZLER, Appellant.**

No. 3750–2.

Supreme Court of Arizona,
In Banc.

Jan. 6, 1983.
Rehearing Denied Feb. 16, 1983.

See also 128 Ariz. 583, 627 P.2d 1081.

**44**

Robert K. Corbin, Atty. Gen., Phoenix by William J. Schafer, III and Jessica Gifford, Asst. Attys. Gen., for appellee.

Cary Sandman, Tucson, for appellant.

CAMERON, Justice.

Defendant, Douglas Edward Gretzler, was sentenced to death for two counts of first degree murder, following remand for resentencing pursuant to *State v. Watson,* 120 Ariz. 441, 586 P.2d 1253 (1978), cert. denied 440 U.S. 924, 99 S.Ct. 1254, 59 L.Ed.2d 478 (1979). This court has jurisdiction of this appeal under Art. 6, § 5(3) of the Arizona Constitution, and A.R.S. §§ 13–4031 and 13–4035.

The issues raised on appeal are:

I.  Is capital punishment an unconstitutionally excessive penalty for any person found to have impaired mental capacity under A.R.S. § 13–454(F)(1)?

II.  Did the court's finding of two additional aggravating factors in the second sentencing proceeding violate the prohibition against double jeopardy?

III.  Did the defendant commit these murders in expectation of receiving anything of pecuniary value?

IV.  Is the statutory aggravating circumstance of killing in an "especially heinous, cruel, or depraved manner" unconstitutionally broad or vague, and did the defendant commit these murders in such a manner?

V.  Does the Arizona death penalty statute provide adequate guidance for the use of sentencing discretion to comply with the eighth and fourteenth amendments?

VI.  Is there a constitutional right to jury sentencing in capital cases?

VII.  Did resentencing pursuant to *State v. Watson,* supra:

a.  Violate the prohibition against ex post facto laws,

b.  Violate double jeopardy, or

c.  Constitute judicially created penalties in violation of due process and separation of powers?

VIII.  Was it error to consider the defendant's prior convictions in aggravation of sentence?

IX.  Does this court, in its independent review of the evidence, find that the death sentence was inappropriate pun-

ishment for this offense and this offender?

Although the facts of this case have been fully described in previous appeals, see *State v. Gretzler,* 126 Ariz. 60, 612 P.2d 1023 (1980) [Gretzler I]; see also *State v. Steelman,* 120 Ariz. 301, 585 P.2d 1213 (1978) [Steelman I], a summary of these facts is included here as necessary for the determination of this appeal.

The defendant was convicted in the instant case of kidnapping one Vincent Armstrong, of murdering and robbing a young couple, Michael and Patricia Sandberg, and of burglarizing the couple's home. This incident comprises only a small part of a series of crimes engaged in by Douglas Gretzler and Willie Steelman in the fall of 1973, involving kidnapping, armed robbery, rape, burglary, and the murders of at least seventeen people.

This series of crimes began on 11 October 1973 when Gretzler and Steelman arrived in Arizona and during the succeeding four days robbed four persons in three separate incidents. On 17 October they next kidnapped two young men, commandeered their van, drove them to Stanislaus County, California, and murdered them. Three days later Gretzler and Steelman were hitchhiking near Petaluma, California. They kidnapped a young couple who stopped for them, with Steelman raping the female victim before the couple was released. They then returned to Arizona in a stolen car. On the way they picked up a hitchhiker, whom they murdered near the Superstition Mountains. In Phoenix, on 25 October, they murdered two more persons, a couple that had been friends of Steelman's and had seen Gretzler and Steelman in the company of the two young men murdered the week before. Gretzler and Steelman now proceeded to Tucson. While hitchhiking near Tucson on 2 November, they killed and robbed a man who stopped to give them a ride. Then began the events upon which the instant convictions and sentencing are based.

On 3 November, Gretzler and Steelman were again hitchhiking in Tucson. They kidnapped Vincent Armstrong when he stopped for them, holding him at gunpoint. Armstrong escaped, however, by diving out of the moving automobile. He then reported his abduction and theft of his car to the police.

Gretzler and Steelman continued on in Vincent Armstrong's car to the condominium complex where the Sandbergs resided. They accosted Michael Sandberg, who was washing his automobile in the parking lot. Steelman displayed his gun to Sandberg, and the two men forced Sandberg to take them to his condominium where his wife Patricia was studying. While inside the men tried to change their appearance, forcing Pat to assist them, and trading their clothing for some of Michael's. Gretzler and Steelman then tied up the Sandbergs; the couple was put in the bathroom while their captors finished preparations to leave. Michael and Patricia were both gagged and bound, tied at the wrists with heavy twine. After about an hour in the bathroom, Patricia became so terrified that her captors gave her some of her own Valium in an attempt to calm her down. The Sandbergs were then separated, with Patricia being placed in the living room and Michael in the bedroom; each was now also bound at the legs. Patricia was placed face down on the living room couch and was covered entirely by a blanket. Michael was placed in a crouched position on his bed, and his legs were attached with heavy twine to more twine around his neck, so that he would choke if his legs were straightened. The couple was forced to remain in these positions for some time. Gretzler then went into the bedroom and shot Michael in the head. Next Gretzler returned to the living room and shot Patricia in the head. Steelman took the gun and fired one more shot into Patricia's body, to be completely satisfied that they had killed her. Gretzler and Steelman then thoroughly wiped down the apartment in an attempt to eliminate their fingerprints. They gathered together those items in the apartment they had decided to steal, including credit cards, checks, an expensive camera, and other personal property belonging to the Sandbergs. They then took the Sandbergs' car, making their escape.

They returned to California, where, near the town of Lodi, they entered the home of a local family and forced the father to open his safe, from which they stole between $3,000 and $4,000. Gretzler bound and gagged the four adults and three teenagers in the home, and then shot each of them to death. Afterwards, he proceeded to a bedroom where Steelman had pulled a blanket over the heads of two sleeping children. Gretzler shot one sleeping child to death, and then waited while Steelman shot and killed the other child.

Gretzler and Steelman were arrested by California authorities on 8 November 1973 in connection with the mass murder in Lodi. Each was convicted of nine counts of first degree murder. The pair was then brought to Arizona on charges arising from the Sandberg murders and Armstrong kidnapping. Each was tried separately, and each was convicted on the first degree murder and related charges. They received prison sentences for the related charges, and were sentenced to death for the murders. Their convictions, and the sentences received for the related charges, were affirmed on appeal. In light of new constitutional interpretations in *State v. Watson,* supra, each of their death sentences was vacated, and their cases remanded to the Superior Court for resentencing. *Steelman I,* supra; *Gretzler I,* supra. Upon remand, each was again sentenced to death. We have already reviewed and affirmed the death sentence of Steelman in *State v. Steelman,* 126 Ariz. 19, 612 P.2d 475 (1980) [Steelman II]. While Gretzler has brought some isolated issues regarding his sentencing before this court previously on special action, *State v. Superior Court of Arizona, Douglas Edward Gretzler, Real Party in Interest,* 128 Ariz. 583, 627 P.2d 1081 (1981) [Gretzler II], it is our present task to examine the propriety of his resentence to death.

## I

### IS PARTIAL MENTAL IMPAIRMENT AN ABSOLUTE BAR TO THE DEATH PENALTY?

■ The defendant did not raise an insanity defense at trial, and in fact the psy-chiatric testimony which was adduced for the purpose of sentencing supports the conclusion that defendant was legally sane at the time of the killings. Under the M'Naghten rule adopted in Arizona, this specifically means that defendant Gretzler both understood the nature and quality of his actions, and knew that they were wrong. See *Steelman I,* supra, 120 Ariz. at 311–13, 585 P.2d at 1223–25; *State v. Schantz,* 98 Ariz. 200, 207, 403 P.2d 521, 525 (1965), cert. denied 383 U.S. 1015, 86 S.Ct. 628, 15 L.Ed.2d 530 (1966).

At resentencing, however, the trial judge found that the mitigating circumstance described in former A.R.S. § 13–454(F)(1), presently § 13–703(G)(1), was established— that "defendant's capacity to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of the law was significantly impaired, but not so impaired as to constitute a defense to prosecution." We thus have a situation in which defendant's mental capacity was only partially, though significantly, impaired.

While Arizona has not adopted the standard of "partial" responsibility in complete abrogation of criminal responsibility, *State v. Schantz,* supra, our capital sentencing statute specifically requires that significant mental impairment be taken into account as a mitigating circumstance in determining sentence. This mitigating circumstance, together with other mitigating circumstances, is to be carefully weighed against aggravating circumstances present in the case, to determine whether leniency is appropriate. Former A.R.S. § 13–454(D), presently § 13–703(E). Defendant attacks this procedure, claiming that a finding of significant impairment calls for leniency in every case, regardless of the degree of that impairment and the other circumstances of the case. Defendant contends that partial mental impairment of a defendant always renders death an unconstitutionally excessive penalty, citing the eighth and fourteenth amendments to the United States Constitution. Defendant correctly notes that the United States Supreme Court has stated that

"a punishment is 'excessive' and unconstitutional if it (1) makes no measurable contribution to acceptable goals of punishment and hence is nothing more than the purposeless and needless imposition of pain and suffering; or (2) is grossly out of proportion to the severity of the crime." *Coker v. Georgia,* 433 U.S. 584, 592, 97 S.Ct. 2861, 2866, 53 L.Ed.2d 982, 989 (1977).

Defendant does not argue that the death penalty is grossly out of proportion to the severity of the crime, and indeed it would be surprising if he did, considering the number of human lives he has taken. We need only examine, therefore, whether in this case a death sentence would serve acceptable goals of punishment.

The retributive justification of punishment has been explained in *Gregg v. Georgia:*

> "In part, capital punishment is an expression of society's moral outrage at particularly offensive conduct. This function may be unappealing to many, but it is essential in an ordered society that asks its citizens to rely on legal processes rather than self-help to vindicate their wrongs.
>
> > 'The instinct for retribution is part of the nature of man, and channeling that instinct in the administration of criminal justice serves an important purpose in promoting the stability of a society governed by law. When people begin to believe that organized society is unwilling or unable to impose upon criminal offenders the punishment they "deserve," then there are sown the seeds of anarchy—of self-help, vigilante justice, and lynch law.' *Furman v. Georgia,* supra, at 308, 92 S.Ct. at 2726 (Stewart, J., concurring)." 428 U.S. 153, 183, 96 S.Ct. 2909, 2930, 49 L.Ed.2d 859, 880 (1976) (judgment of the Court and opinion of Stewart, Powell, and Stevens, JJ., footnote omitted). *See also Furman v. Georgia,* 408 U.S. 238, 452–54, 92 S.Ct. 2726, 2835–36, 33 L.Ed.2d 346, 472–74 (1972). (Burger, C.J., dissenting).

Retribution thus serves the twin purposes of reaffirming societal values regarding wrongdoing and dispensing punishment that fits the crime. As discussed above, Gretzler took innocent lives knowing the nature and quality of his acts, and knowing that he was doing wrong. He is thus the proper subject for societal retribution. While the court may take into account defendant's somewhat diminished volitional capacities in determining proper sentence, see infra, it does not follow that partial incapacity will fully exempt defendant from society's condemnation in all instances. Such exemption is certainly not mandated in the instant case.

The second and dominant goal of punishment in our judicial system is deterrence. Our first consideration is the specific deterrence of Douglas Gretzler. As United States Supreme Court Justice White has pointed out, "It [is] clear enough that death finally forecloses the possibility that a prisoner will commit further crimes, whereas life imprisonment does not." *Roberts v. Louisiana,* 428 U.S. 325, 354, 96 S.Ct. 3001, 3015–16, 49 L.Ed.2d 974, 993 (1976) (White, Blackmun, Rehnquist, JJ., Burger, C.J., dissenting). Incarceration is intended to serve the goal of isolation of dangerous individuals, but the prison system is a human enterprise, and thus it cannot serve this goal perfectly no matter how diligent the effort. This state has learned through sad experience that even after incarceration a violent person may become a menace to other prisoners, *see e.g. State v. Vickers,* 129 Ariz. 506, 633 P.2d 315 (1981) (prison inmate committed violent strangulation and stabbing murder of another prisoner; he later killed yet another prisoner by burning him to death, see No. 5698, *State v. Vickers*), or may escape and become a menace to the public at large, *see e.g. State v. Greenawalt,* 128 Ariz. 150, 624 P.2d 828 (1981), cert. denied 454 U.S. 882, 102 S.Ct. 364, 70 L.Ed.2d 191 (1981) (Greenawalt and fellow inmate Tison escaped prison and murdered four people, including a 22 month old baby). At some point a violent individual has caused so much harm and destruction of human life that society is entitled to foreclose the possibility of further deprivation.

The next consideration is that of general deterrence. Gretzler argues that, in view of his partial mental impairment, capital punishment for him will not deter other similarly impaired persons, because such persons cannot be deterred. He further argues that punishing him in this way will not deter unimpaired persons either, because such persons cannot identify with those like Gretzler. We disagree. Gretzler's volitional impairment is only partial, and it does not follow that persons like Gretzler cannot be deterred from aberrant behavior. Also, Gretzler's mental impairment is not so substantial as to make his punishment seem meaningless to unimpaired citizens. Throughout defendant's brief, Gretzler characterizes his plight as that of a "mad man" facing execution. He is not a "mad man," however, and in fact was found sane at trial. Gretzler's condition thus does not make him an improper subject for either the retributive or deterrence justifications of punishment. Acceptable goals of punishment are served by submitting Gretzler's case to capital sentencing consideration.

In considering Gretzler's sentence, his partial mental impairment is taken into account, along with other aggravating and mitigating factors, in deciding the appropriate sentence under A.R.S. § 13–703. The eighth and fourteenth amendments require no more. The United States Supreme Court has upheld the constitutionality of similar capital sentence statutes in other states that require the balancing of such aggravating and mitigating circumstances. *Gregg v. Georgia,* supra; *Jurek v. Texas,* 428 U.S. 262, 96 S.Ct. 2950, 49 L.Ed.2d 929 (1976); *Proffitt v. Florida,* 423 U.S. 242, 96 S.Ct. 2960, 49 L.Ed.2d 913 (1976). Further, the law upheld in *Proffitt v. Florida,* like the Model Penal Code section from which our statute is adopted (§ 210.6, Proposed Official Draft 1962), specifically includes partial mental impairment as one of the statutory mitigating circumstances. A finding of partial mental impairment does not bar the imposition of the death penalty. See A.R.S. § 13–703(E).

## II

## DOES THE FINDING OF TWO ADDITIONAL AGGRAVATING CIRCUMSTANCES ON RESENTENCING VIOLATE DOUBLE JEOPARDY?

After conviction for first degree murder, defendant originally was sentenced to death upon a finding of two statutory aggravating circumstances, based upon his nine earlier convictions for first degree murder, and no substantial mitigating circumstances. The two aggravating circumstances specifically found were former A.R.S. § 13–454(E)(1), presently § 13–703(F)(1), prior convictions for crimes punishable by life imprisonment or death, and former A.R.S. § 13–454(E)(2), presently § 13–703(F)(2), prior convictions for felonies involving the use or threat of violence. On resentencing, defendant again was sentenced to death. This time, however, in addition to the two aggravating circumstances cited above, the court found two additional aggravating circumstances. The court found that Gretzler committed the offense in expectation of receiving something of pecuniary value. See former A.R.S. § 13–454(E)(5), presently § 13–703(F)(5). Also, it found that Gretzler murdered the Sandbergs in "an especially heinous, cruel, or depraved manner." See former A.R.S. § 13–454(E)(6), presently § 13–703(F)(6). As noted above, the court additionally found as a mitigating factor that Gretzler's mental capabilities were partially impaired, see former A.R.S. § 13–454(F)(1), presently § 13–703(G)(1), but that this impairment was not "sufficiently substantial to call for leniency." See former A.R.S. § 13–454(D), presently § 13–703(E). Defendant challenges the propriety of finding the two additional aggravating circumstances on resentencing.

He first argues that these additional findings violate the double jeopardy provision of the fifth amendment, relying on *Bullington v. Missouri,* 451 U.S. 430, 101 S.Ct. 1852, 68 L.Ed.2d 270 (1981). The argument that *Bullington* controls cases like defendant's has been presented to, and rejected by, the Ninth Circuit Court of Appeals in *Knapp v.*

*Cardwell,* 667 F.2d 1253 (1982), cert. denied —— U.S. ——, 103 S.Ct. 473, 74 L.Ed.2d 621 (1982). Bullington held that once a defendant is "acquitted" of the death penalty in a formal jury sentencing procedure resembling trial, receiving instead life imprisonment, he may not be given the death penalty in a later proceeding if his underlying conviction is reversed and he is retried. The Ninth Circuit Court in Knapp stated that, "The present case is clearly distinguishable from Bullington." Id. at 1265. It pointed out that the defendants in *Knapp,* including Gretzler, received the death penalty at their original sentencing, not life imprisonment. Thus, "There exists no implied 'acquittal' in the case. The sentence that can be imposed on resentencing here cannot be more severe than that previously assessed." Id. at 1265 (citation omitted).

In the instant case, the state was justified in its attempt to establish two additional aggravating factors on resentencing, as the law on both of these factors had been substantially clarified since the time of the original sentencing. In 1980 in *State v. Clark,* 126 Ariz. 428, 616 P.2d 888, cert. denied 449 U.S. 1067, 101 S.Ct. 796, 66 L.Ed.2d 612 (1980), this court interpreted the "pecuniary gain" circumstance of A.R.S. § 13–454(E)(5), expressly holding for the first time that this factor was not limited to the "hired gun" situation. 126 Ariz. at 436, 616 P.2d at 896. In 1980 in *Steelman II,* supra, we also substantially clarified the meaning of the words "especially heinous, cruel, or depraved manner" used in A.R.S. § 13–454(E)(6), and specifically held that the Steelman/Gretzler slaying of the Sandbergs met this statutory wording. 126 Ariz. at 26, 612 P.2d at 482. These clarifications of law were not available to the judge at the initial sentencing, but were properly brought to the court's attention upon resentencing.

■ The purpose of the sentencing procedure is to obtain the appropriate punishment for the particular crime and the particular offender, and the trial court upon remand may take into account new inter-

pretations of the death penalty statute occurring between the first and second sentencing. See *State v. Poland,* 132 Ariz. 269, 286, 645 P.2d 784, 801 (1982). The resentencing court did not err in considering the two aggravating factors not found at the initial sentencing. However, even if we were to set aside the two additional findings of aggravating circumstances, we would hold that, considering the two aggravating circumstances previously found by the trial court and found again at the resentencing, as well as the newly found mitigating circumstance, the death penalty was properly imposed.

## III

## WERE THE MURDERS COMMITTED WITH THE EXPECTATION OF RECEIVING ANYTHING OF PECUNIARY VALUE?

■ On resentencing, the trial judge found the aggravating circumstance set out by former A.R.S. § 13–454(E)(5), presently § 13–703(F)(5):

> "5. The defendant committed the offense as consideration for the receipt, or in expectation of the receipt, of anything of pecuniary value."

In *State v. Madsen,* 125 Ariz. 346, 353, 609 P.2d 1046, 1053 (1980), cert. denied 449 U.S. 873, 101 S.Ct. 213, 66 L.Ed.2d 93 (1980), we stated, "A.R.S. § 13–454(E)(5) requires that the murder must have been committed for the consideration of financial gain. To comply with the statute, the receipt of the [property] must be a cause of the murder * * *." In *State v. Clark,* supra, also decided in 1980, we specifically elaborated that this aggravating circumstance was not limited to the "hired gun" or "contract" type killing. Rather, it involves any murder committed for a "financial motivation." 126 Ariz. at 436, 616 P.2d at 896. *Accord State v. Poland,* supra, 132 Ariz. at 285–86, 645 P.2d at 800–01; *State v. Blazak,* 131 Ariz. 598, 605, 643 P.2d 694, 701 (1981). In *State v. Clark,* we found that this circumstance was met, observing,

"After killing the Thumms the appellant took their credit cards, some money, two valuable diamond rings, and their 1976 Chevrolet station wagon. The circumstances surrounding the total episode reflect that the expectation of financial gain was a cause of the murders." 126 Ariz. at 436, 616 P.2d at 896.

Similarly, in the present case, after killing the Sandbergs, the defendant took their credit cards, blank checks, an expensive camera, and their automobile. These circumstances likewise reflect a financial motivation.

More specifically, in *State v. (Raymond) Tison,* 129 Ariz. 546, 555, 633 P.2d 355, 364 (1981), we held that A.R.S. § 13–454(E)(5) was established where we concluded that "the homicides were committed to secure a vehicle with which to continue their flight." Gretzler and Steelman likewise murdered the Sandbergs to obtain a substitute car in which they could continue their flight. The automobile of Vincent Armstrong which they had been driving was known to the police to be stolen. In the words of Gretzler's own confession, "[W]e needed their car. So we tied them up and did them in." We find no error.

IV

IS THE AGGRAVATING CIRCUMSTANCE OF KILLING IN AN "ESPECIALLY HEINOUS, CRUEL, OR DEPRAVED MANNER" UNCONSTITUTIONALLY BROAD OR VAGUE, AND WAS THIS CIRCUMSTANCE ESTABLISHED IN THE INSTANT CASE?

█ Defendant argues the aggravating circumstance established by former A.R.S. § 13–454(E)(6), presently § 13–703(F)(6), that the "defendant committed the offense in an especially heinous, cruel, or depraved manner," is unconstitutionally broad and vague. We have already considered an identical claim in another case and have held this aggravating circumstance was not defined in an unconstitutionally broad or vague manner. *State v. Ortiz,* 131 Ariz. 195, 206, 639 P.2d 1020, 1031 (1981), cert.

denied 456 U.S. 984, 102 S.Ct. 2259, 72 L.Ed.2d 863 (1982). We have also twice pointed out that the United States Supreme Court, in *Proffitt v. Florida,* supra, has approved of "strikingly similar terms" in another state's capital sentencing statute. *State v. Knapp,* 114 Ariz. 531, 543, 562 P.2d 704, 716 (1977), cert. denied 435 U.S. 908, 98 S.Ct. 1453, 55 L.Ed.2d 500 (1978); *State v. Richmond,* 114 Ariz. 186, 197, 560 P.2d 41, 52 (1976), cert. denied 433 U.S. 915, 97 S.Ct. 2988, 53 L.Ed.2d 1101 (1976). In *Proffitt,* the Supreme Court considered Florida's statutory aggravating circumstance of "especially heinous, atrocious, and cruel." The Court stated, "We cannot say that the provision," as construed by the Florida Supreme Court, "provides inadequate guidance to those charged with the duty of recommending or imposing sentences in capital cases." 428 U.S. at 255–56, 96 S.Ct. at 2968, 49 L.Ed.2d at 925.

The application of such a provision may be constitutionally infirm for either of two reasons. First, a state's highest tribunal may fail to adopt a construction of its statute sufficiently narrow to make sentencing discretion "suitably directed and limited." *Gregg v. Georgia,* supra, 428 U.S. at 189, 96 S.Ct. at 2932, 49 L.Ed.2d at 883 (1976) (judgment of the Court and opinion of Stewart, Powell, and Stevens, J.J.) (upholding Georgia's death penalty statute). Secondly, the state tribunal may stray in an individual case from an otherwise constitutionally narrow construction. *See Godfrey v. Georgia,* 446 U.S. 420, 100 S.Ct. 1759, 64 L.Ed.2d 398 (1980) (reversing one individual application of Georgia's death penalty statute). Neither of these problems are present here. We believe that the statutory phrase "especially heinous, cruel, or depraved" has been construed in a constitutionally narrow fashion, and has been properly applied in individual cases. A summary of the law which has been developing in the area supports this conclusion.

█ Our initial interpretations of this statutory phrase recognized that the words "especially heinous, cruel, or depraved"

---

were not intended to apply to all first degree murders. Rather, they apply to "a killing wherein additional circumstances of the nature enumerated * * * set the crime apart from the usual or the norm." *State v. Knapp,* supra, 114 Ariz. at 543, 562 P.2d at 716, citing *State v. Dixon,* 283 So.2d 1, 9 (Fla.1973). We have more recently reiterated that we will not allow this provision to be used as a "catch-all for those first degree murders where no other aggravating circumstance applies." *State v. Ortiz,* supra, 131 Ariz. at 206, 639 P.2d at 1031.

In *State v. Knapp,* supra, 114 Ariz. at 543, 562 P.2d at 716, we set forth the following definitions of the words heinous, cruel, and depraved:

"heinous: hatefully or shockingly evil; grossly bad.

cruel: disposed to inflict pain esp. in a wanton, insensate or vindictive manner: sadistic.

depraved: marked by debasement, corruption, perversion or deterioration."

We have explained on numerous occasions that cruelty involves the pain and distress visited upon the victims, and that heinous and depraved go to the mental state and attitude of the perpetrator as reflected in his words and actions. *State v. Poland,* supra, 132 Ariz. at 285, 645 P.2d at 800; *State v. (Ricky) Tison,* 129 Ariz. 526, 543, 633 P.2d 335, 352 (1981); *State v. Bishop,* 127 Ariz. 531, 534, 622 P.2d 478, 481 (1981); *State v. Clark,* supra, 126 Ariz. at 436, 616 P.2d at 896; *State v. Ceja,* 126 Ariz. 35, 39, 612 P.2d 491, 495 (1980); *State v. Lujan,* 124 Ariz. 365, 372, 604 P.2d 629, 636 (1979). We have also pointed out that "it [is] not necessary that all three elements, heinous, cruel, or depraved, be present in the murder. The statutory expression is in the disjunctive, so either all or one could constitute an aggravating circumstance." *State v. Clark,* supra, 126 Ariz. at 436, 616 P.2d at 896, citing *State v. Ceja,* supra, 126 Ariz. at 39, 612 P.2d at 495. *Accord State v. Bishop,* supra, 127 Ariz. at 534, 622 P.2d at 481. We therefore consider these circumstances separately.

Cruelty has been specifically defined to involve the infliction of pain on the victims. This element was appropriately found in *State v. Knapp,* supra, in which defendant burned to death his two infant daughters. This court remarked, "We can hardly think of a more ghastly death than this for anyone." 114 Ariz. at 543, 562 P.2d at 716. Another example of a case in which cruelty was found is *State v. Mata,* 125 Ariz. 233, 609 P.2d 48 (1980), cert. denied 449 U.S. 938, 101 S.Ct. 338, 66 L.Ed.2d 161 (1980), in which the killers performed successive rapes and severe beatings on the victim prior to murdering her.

We have also stated that our concept of cruelty involves not only physical pain, but also "mental * * * distress visited upon the victims." *State v. Clark,* supra, 126 Ariz. at 436, 616 P.2d at 896, citing *State v. Ceja,* supra, 126 Ariz. at 39, 612 P.2d at 495. A case where this was found to be present is *State v. (Ricky) Tison,* supra, in which the victims were held by their heavily armed captors for an extended period, forced at gunpoint to move from place to place, and finally had to witness the killing of other family members prior to their own deaths. We found cruelty based on the "great degree of mental pain" suffered by the victims. Id. at 543, 633 P.2d at 352. *Accord Steelman II,* discussed infra.

Where, however, there is no evidence that the victims actually suffered physical or mental pain prior to death, or where the evidence presented is inconclusive, we have held that cruelty was not shown. *See e.g. State v. Ortiz,* supra, 131 Ariz. at 210, 639 P.2d at 1035; *State v. Bishop,* supra, 127 Ariz. at 534, 622 P.2d at 481; *State v. Clark,* supra, 126 Ariz. at 436, 616 P.2d at 896; *State v. Ceja,* supra, 126 Ariz. at 39, 612 P.2d at 495.

In contrast to the emphasis upon the victim's suffering and feelings in the case of cruelty, the statutory concepts of heinous and depraved involve a killer's vile state of mind at the time of the murder, as evidenced by the killer's actions. Our cases have suggested specific factors which lead to a finding of heinousness or depravity.

The first such factor is the apparent relishing of the murder by the killer. In *State v. Clark,* supra, we found a depraved state of mind where defendant murdered four people and then "kept a spent bullet as a grisly souvenir of his crime." 126 Ariz. at 437, 616 P.2d at 897. Similarly, in *State v. Bishop,* supra, we found a heinous and depraved mental state where defendant killed the victim by striking him in the head repeatedly with a claw hammer, tied him up, caused him to fall down a mine shaft, and threw rocks on the victim as he lay twitching. As defendant drove away from the scene, he turned around and waved, saying, "Good-bye, Norman. I hope we never see you again." 127 Ariz. at 534, 622 P.2d at 481. The killers in these cases clearly relished their crimes.

Another factor we have found to demonstrate a heinous or depraved state of mind is the infliction of gratuitous violence on the victim. This factor was held to be present in *State v. Ceja,* supra. In that case defendant shot the female victim twice in the chest, dragged her into the bedroom, and then shot her four more times in the head for no apparent reason. He shot the male victim three times, and after his victim had fallen, shot him once more in the back. He then began kicking the male victim in the face repeatedly, at a time when the victim was already unconscious or dead. We said,

"We think that defendant's conduct in continuing his barrage of violence, inflicting wounds and abusing his victims, beyond the point necessary to fulfill his plan to steal, beyond even the point necessary to kill, is such an additional circumstance of a * * * depraved nature so as to set it apart from the 'usual or the norm.'" 126 Ariz. at 40, 612 P.2d at 496, quoting *State v. Ceja,* supra, 115 Ariz. at 417, 565 P.2d at 1278.

Closely related to the above two factors, and also demonstrating a heinous or depraved state of mind, is the needless mutila-

tion of the victim. This occurred, for example, in *State v. Vickers,* supra. There, after strangling his cellmate to death, inmate Vickers carved the word "Bonzai" into the victim's back. We held that "Defendant's actions subsequent to the death of [the victim] indicate that the offense was committed in an especially depraved manner * * * [reflecting] a mental state that is 'marked by debasement' * * *." 129 Ariz. at 515, 633 P.2d at 324. *Accord State v. Smith,* 131 Ariz. 29, 638 P.2d 696 (1982) (offense heinous or depraved where defendant mutilated female murder victims' breasts and sex organs).

Other factors considered by this court are the senselessness of the crime, and the helplessness of the victim. Either or both of these factors, considered together with other circumstances present in a particular case, may lead to the conclusion that an offense was heinous or depraved. For example, in *State v. Tison,* supra, we found the crime to be heinous or depraved, stating:

"The senselessness of the murders, given the inability of the victims to thwart [their captors'] escape, especially in such an isolated area, and the fact that a young child, less than two years old, who posed no threat to the captors, was indiscriminately shot while in the arms of his mother, compels the conclusion that the actual slayers possessed a shockingly evil state of mind." 129 Ariz. at 543, 633 P.2d at 352.

We similarly found a heinous and depraved state of mind to exist in *State v. Ortiz,* supra, where after stabbing the mother to death, defendant made indiscriminate violent attacks on her three young children, attempting to stab and burn them to death. 131 Ariz. at 210, 639 P.2d at 1035.[1] *Accord State v. Clark,* supra, 126 Ariz. at 436–37, 616 P.2d at 896–97 (senseless killings of former friends and co-workers, "totally without regard for human life" found depraved). The mere existence of senseless-

---

1. "We have also considered acts done immediately after the actual killing to determine the murderer's mental state at the time of the killing." *State v. Lujan,* supra, 124 Ariz. at 372, 604 P.2d at 636.

ness or helplessness of the victim, in isolation, need not always lead to a holding that the crime is heinous or depraved, however. *See State v. Lujan,* supra, 124 Ariz. at 373, 604 P.2d at 637 (defendant's killing of victim already rendered unconscious in continuing attack by other members of gang involved in robbery not "especially heinous or depraved"); *State v. Blazak,* supra, 131 Ariz. at 604, 643 P.2d at 700 (unnecessary killing of bystander to robbery, in addition to killing of victim of robbery, not heinous or depraved).

Where no circumstances, such as the specific factors discussed above, separate the crime from the "norm" of first degree murders, we will reverse a finding that the crime was committed in an "especially heinous, cruel, or depraved manner." *See e.g. State v. Blazak,* supra, 131 Ariz. at 604, 643 P.2d at 700; *State v. Madsen,* supra, 125 Ariz. at 352, 609 P.2d at 1052; *State v. Lujan,* supra, 124 Ariz. at 373, 604 P.2d at 637; *State v. Brookover,* 124 Ariz. 38, 41, 601 P.2d 1322, 1325 (1979); *State v. Watson,* supra, 120 Ariz. at 447–48, 586 P.2d at 1259–60.

We must then consider whether the facts here fit within our definition of the terms "especially heinous, cruel, or depraved." We have already had the opportunity to review the facts of this particular crime in light of this statutory standard in Steelman II, supra. There we held the Sandberg murders to be heinous, cruel, or depraved, concluding:

> "First degree murder is by its nature willful, cruel and repugnant. But the facts of this case set it 'apart from the norm of first degree murders.' *State v. Brookover,* 124 Ariz. 38, 601 P.2d 1322 (1979)." 126 Ariz. at 26, 612 P.2d at 482.

We believe the same result is mandated in Gretzler's case.

Michael Sandberg was kept tied up in a crouched position on his bed. A single stand of heavy parcel post twine extended up Michael's back in a V-pattern from his ankles to around his neck. It was configured in such a way as to choke Michael if his legs were straightened. He was con-

fined in this manner for a sustained period. As we stated:

> "There can be no doubt that the victims suffered mental anguish as a result of being held prisoner for an extended period. Patricia, for example, had to take medication for her highly emotional condition as a result of being held prisoner. They knew that their captors were armed, hiding from the police, and anxious to escape. It may be inferred that throughout their imprisonment, they were uncertain as to their ultimate fate. This uncertainty had to be intensified when they were taken to separate rooms, bound and gagged." Id.

Patricia also had to endure the unimaginable terror of having her husband shot to death within her hearing, and then having to wait for her own turn to come.

The Sandbergs clearly suffered the kind of "mental and physical distress" we have held constitutes cruelty. *State v. Tison,* supra, 129 Ariz. at 543, 633 P.2d at 352. We thus find that this statutory aggravating circumstance is present in the instant case.

## V

## CONSTITUTIONALITY OF THE ARIZONA DEATH PENALTY STATUTE

Defendant next contends that the Arizona death penalty statute, former A.R.S. § 13–454, presently § 13–703, is unconstitutional because it fails to provide adequate standards to guide sentencing discretion. This issue has been previously considered and rejected by this court on numerous occasions. *State v. Blazak,* supra, 131 Ariz. at 601, 643 P.2d at 697; *State v. Jordan,* 126 Ariz. 283, 285, 614 P.2d 825, 827 (1980), cert. denied 449 U.S. 986, 101 S.Ct. 408, 66 L.Ed.2d 251 (1980); *State v. Mata,* supra, 125 Ariz. at 241–42, 609 P.2d at 56–57; *State v. Richmond,* supra, 114 Ariz. at 194–95, 560 P.2d at 49–50.

Our statute, derived from the Model Penal Code (§ 210.6, Proposed Official Draft, 1962), and similar to the captial sentencing statutes upheld in *Gregg v. Georgia,* supra, and *Proffitt v. Florida,* supra, sets out spe-

cific lists of aggravating and mitigating circumstances to be considered in capital sentencing decisions. Our statute also requires the court to consider any other relevant mitigating circumstances. We have explained that the statutory scheme is intended to "resolv[e] the need for flexibility in order to afford individualized decision-making in capital cases and the need for standards to prevent arbitrariness when unbridled discretion rests with the sentencer * * *." *State v. Greenawalt,* supra, 128 Ariz. at 175, 624 P.2d at 853 (1981), cert. denied 454 U.S. 882, 102 S.Ct. 364, 70 L.Ed.2d 191 (1981), citing *State v. Mata,* supra, 125 Ariz. at 242, 609 P.2d at 57. We have also stated that

> "the purpose of an aggravation/mitigation hearing is to determine the character and propensities of the defendant. The punishment should fit the offender and not merely the crime. *Williams v. New York,* 337 U.S. 241, 69 S.Ct. 1079, 93 L.Ed. 1337 (1949)." *State v. Valencia,* 124 Ariz. 139, 141, 602 P.2d 807, 809 (1979).

Our capital sentencing statute applies only to those found guilty of first degree murder, and requires the trial judge to choose either a sentence of death, or life imprisonment without the possibility of parole for twenty-five years, based on the evidence of aggravating and mitigating circumstances. Former A.R.S. § 13–454(D), presently § 13–703(E).

In view of the gravity of the death penalty, we have also held that in all capital cases, automatically appealed to this court under Rule 31.2(b), Arizona Rules of Criminal Procedure, 17 A.R.S., we will conduct an independent review of all matters of aggravation and mitigation, and will decide independently whether the death sentence should be imposed in each case. *State v. Richmond,* supra, 114 Ariz. at 196, 560 P.2d at 51. We also conduct a proportionality review in each case to consider "whether the sentences are excessive or disproportionate to the penalty imposed in similar cases, considering both the crime and the defendant." Id., (citations omitted).

Where none of the statutory aggravating circumstances are found to be present, our statute prohibits the death penalty. Former A.R.S. § 13–454(D), presently § 13–703(E). *See e.g. State v. Madsen,* supra, 125 Ariz. at 353, 609 P.2d at 1053; *State v. Lujan,* supra, 124 Ariz. at 373, 604 P.2d at 637.

Where one or more statutory aggravating circumstance is found, and no mitigation exists, the statute requires the death penalty. Former A.R.S. § 13–454(D), presently § 13–703(E). *See e.g. State v. Smith,* supra, 131 Ariz. at 35, 638 P.2d at 702; *State v. Jordan,* supra, 126 Ariz. at 290, 614 P.2d at 832.

Where both aggravating and mitigating circumstances are found in a given case, the trial judge, and then this court on review, must determine whether the mitigating circumstances are "sufficiently substantial to call for leniency." Former A.R.S. § 13–454(D), presently § 13–703(E). This necessarily involves the difficult weighing and balancing of the aggravating and mitigating circumstances present. We have stated that the number of aggravating and mitigating circumstances is not dispositive, but rather their gravity:

> "The statute does not require that the number of aggravating circumstances be weighed against the number of mitigating circumstances. One mitigating circumstance, for example, may be 'sufficiently substantial' to outweigh two aggravating circumstances. The converse is also true—one aggravating circumstance could be so substantial that two or more mitigating circumstances would not be 'sufficiently substantial to call for leniency.' A.R.S. § 13–454(D). Both the trial court and this court must then 'weigh' the mitigating circumstances against the aggravating circumstances to determine if leniency is required[.]" *State v. Brookover,* supra, 124 Ariz. at 42, 601 P.2d at 1326.

In arriving at a just result, the court must carefully consider all the "compassionate or mitigating factors stemming from the diverse frailties of humankind." *Woodson v. North Carolina,* 428 U.S. 280, 304, 96 S.Ct.

2978, 2991, 49 L.Ed.2d 944, 961 (1976) (judgment of the Court and opinion of Stewart, Powell, and Stevens, JJ.). In some cases the mitigating circumstances are found to outweigh the aggravating factors, and the defendant is spared the death sentence. For example in *State v. Brookover*, supra, defendant's impaired capacity to appreciate · the wrongfulness of his conduct, caused by a medical condition (a brain lesion of a type frequently producing anti-social behavior), outweighed a prior conviction of a drug offense. 124 Ariz. at 41–42, 601 P.2d at 1325–26. The extreme youth of an offender can also be a compelling mitigating circumstance, as demonstrated recently in *State v. Valencia*, 132 Ariz. 248, 645 P.2d 239 (1982). There, the defendant's prior convictions arising from a previous violent incident were outweighed by the fact that defendant was only sixteen years old at the time of each crime. We cited the United States Supreme Court in *Eddings v. Oklahoma*, which stated "chronological age of a minor is itself a relevant mitigating factor of great weight." 455 U.S. 104, 116, 102 S.Ct. 869, 877, 71 L.Ed.2d 1, 12 (1982). 132 Ariz. at 250–51, 645 P.2d at 241–42. In some cases the combined weight of a number of mitigating factors outweighs the aggravation. For example, in *State v. Watson*, 129 Ariz. 60, 63–64, 628 P.2d 943, 946–47 (1981), the facts that the murder occurred as the result of an unexpected shootout with the robbery victim in which the victim fired first, that defendant was twenty one years old at the time of the crime, and that there was evidence defendant had done a great deal of genuine soul searching after the crime, had been a model prisoner while going through the appellate process, had set new goals for himself, and attempted to further his education in prison, outweighed his prior conviction for robbery.

In other cases, however, the mitigating factors are not "sufficiently substantial" to call for leniency. For instance in *State v. Knapp*, supra, defendant's lack of prior criminal record did not outweigh the extreme cruelty of burning his two children to death. 114 Ariz. at 543, 562 P.2d at 716, resentence aff'd 125 Ariz. 503, 504–05, 611

P.2d 90, 91–92 (1979). Similarly in *State v. Ortiz*, supra, defendant's lack of prior criminal record did not excuse his heinous and depraved murder, involving a grave risk of death to others, in which he stabbed a woman to death and then made senseless, indiscriminate attempts to stab and burn to death her three young children. 131 Ariz. at 211, 639 P.2d at 1036. In *State v. Bishop*, supra, defendant's lack of prior criminal record and below average intelligence were not sufficiently substantial to outweigh the heinous and depraved killing which defendant obviously relished. 127 Ariz. at 534–35, 622 P.2d at 481–82. In like manner, in *State v. Clark*, supra, defendant's age (20 years old), poor home life as a child, lack of adult criminal record, and emotional problems were found insufficiently substantial to outweigh his senseless, depraved killing of four persons with total disregard of human life, and with undoubted relish, keeping a souvenir of the occasion. 126 Ariz. at 437, 616 P.2d at 897.

We feel that the statute, as interpreted by our case law, provides constitutionally adequate guidance to the trial judges in deciding whether to impose a capital sentence. As an additional safeguard, this court independently reviews the record of each capital case to determine the propriety of the sentence. *State v. Richmond*, supra. Where the death penalty has been erroneously imposed, we will set it aside in favor of a life sentence. *See e.g. State v. Valencia*, supra, 132 Ariz. at 251, 645 P.2d at 242; *State v. Watson*, supra, 129 Ariz. at 63–64, 628 P.2d at 946–47; *State v. Madsen*, supra, 125 Ariz. at 353, 609 P.2d at 1053; *State v. Lujan*, supra, 124 Ariz. at 373, 604 P.2d at 637; *State v. Brookover*, supra, 124 Ariz. at 42, 601 P.2d at 1326.

The United States Supreme Court has stated that the Florida statute, which is similar to ours,

" * * * passes constitutional muster. That legislation provides that after a person is convicted of first-degree murder, there shall be an informed, focused, guided, and objective inquiry into the question whether he should be sentenced to

death. If a death sentence is imposed, the sentencing authority articulates in writing the statutory reasons that led to its decision. Those reasons, and the evidence supporting them, are conscientiously reviewed by a court which, because of its statewide jurisdiction, can assure consistency, fairness, and rationality in the evenhanded operation of the state law." *Proffitt v. Florida,* supra, 428 U.S. at 259–60, 96 S.Ct. at 2970, 49 L.Ed.2d at 927.

We believe that our procedure likewise passes constitutional muster, and we do not agree with defendant's argument that the Arizona capital sentencing procedure is unconstitutional.

## VI

### RIGHT TO JURY

■ Defendant argues that he has a right under the sixth amendment of the United States Constitution to have a jury participate in the capital sentencing decision. This argument was rejected by the United States Supreme Court in *Proffitt v. Florida,* supra, 428 U.S. at 252, 96 S.Ct. at 2966, 49 L.Ed.2d at 922–23, and has also been rejected by this court on several occasions. *State v. Blazak,* supra, 131 Ariz. at 602, 643 P.2d at 698; *State v. Schad,* 129 Ariz. 557, 574, 633 P.2d 366, 383 (1981), cert. denied 455 U.S. 1492, 102 S.Ct. 1492, 71 L.Ed.2d 693 (1982); *Steelman II,* supra, 126 Ariz. at 20–21, 612 P.2d at 476–77; *State v. Valencia,* 121 Ariz. 191, 198, 589 P.2d 434, 441 (1979), sentence modified on other grounds 132 Ariz. 248, 645 P.2d 239 (1982); *State v. Watson,* supra, 120 Ariz. at 447, 586 P.2d at 1259; *State v. Richmond,* supra, 114 Ariz. at 196, 560 P.2d at 51.

## VII

### RESENTENCING UNDER WATSON

Defendant argues that his resentencing under *State v. Watson,* supra, violates various constitutional rights.

#### a. Ex post facto laws

■ He first argues that such resentencing violates the ex post facto restriction of the United States Constitution. This argument was decided adversely to defendant's position in *State v. Blazak,* supra, 131 Ariz. at 600, 643 P.2d at 696; *State v. Smith,* supra, 131 Ariz. at 29–30, 638 P.2d at 696–97; *State v. Schad,* supra, 129 Ariz. at 574, 633 P.2d at 383; *State v. Greenawalt,* supra, 128 Ariz. at 174, 624 P.2d at 852; *State v. Bishop,* supra, 127 Ariz. at 533, 622 P.2d at 480; *State v. Jordan,* supra, 126 Ariz. at 286, 614 P.2d at 828; *Steelman II,* supra, 126 Ariz. at 20–21, 612 P.2d at 476–77; *State v. Arnett,* 125 Ariz. 201, 202, 608 P.2d 778, 779 (1980); *State v. Watson,* supra, 120 Ariz. at 453–54, 586 P.2d at 1265–66.

#### b. Double jeopardy

■ Defendant next argues that the resentencing violates the double jeopardy prohibition. We rejected this claim in *State v. Blazak,* supra, 131 Ariz. at 600, 643 P.2d at 696; *State v. Smith,* supra, 131 Ariz. at 29–30, 638 P.2d at 696–97; *State v. Bishop,* supra, 127 Ariz. at 533, 622 P.2d at 480; *State v. Jordan,* supra, 126 Ariz. at 286, 614 P.2d at 828; *Steelman II,* supra, 126 Ariz. at 20–21, 612 P.2d at 476–77; *State v. Arnett,* supra, 125 Ariz. at 202, 608 P.2d at 779; *State v. Watson,* supra, 120 Ariz. at 453, 586 P.2d at 1265.

#### c. Judicially created penalties

■ Defendant's last argument is that the resentencing under *Watson* is a judicially created penalty in violation of due process and separation of powers. This assertion has been previously rejected in *State v. Blazak,* supra, 131 Ariz. at 600, 643 P.2d at 696; *State v. Greenawalt,* supra, 128 Ariz. at 174, 624 P.2d at 852; *State v. Jordan,* supra, 126 Ariz. at 286, 614 P.2d at 828; *State v. Mata,* supra, 125 Ariz. at 241, 609 P.2d at 56.

Each of these three resentencing arguments has also been considered and rejected by the Ninth Circuit Court of Appeals in *Knapp v. Cardwell,* 667 F.2d 1253, 1259–64 (1982), cert. denied —— U.S. ——, 103 S.Ct. 473, 74 L.Ed.2d 621 (1982).

## VIII

### CONSTITUTIONALITY OF PRIOR CONVICTIONS

Defendant states that the trial court erred in considering his nine prior convictions for first degree murder in California, claiming that these convictions were unconstitutionally obtained. This issue was specifically decided adversely to defendant in his prior special action proceeding, *Gretzler II, supra,* 128 Ariz. at 585–86, 627 P.2d at 1083–84, where we held that those convictions were constitutionally obtained, and that the trial court may take them into account on resentencing.

## IX

### INDEPENDENT REVIEW OF SENTENCE

As stated above, this court reviews the record of each capital case to independently determine the correctness of the findings of the trial court as to aggravating and mitigating circumstances, and to independently determine the propriety of the sentence. The trial court correctly found the two statutory aggravating circumstances of former A.R.S. § 13–454(E)(1), presently § 13–703(F)(1), and former A.R.S. § 13–454(E)(2), presently § 13–703(F)(2), based on the defendant's nine prior convictions for first degree murder in California. These circumstances are respectively, previous conviction of another offense for which life imprisonment or death was imposable, and previous conviction of a felony involving the threat or use of violence.[2] As discussed above, the judge on resentencing found two additional aggravating circumstances to be present in this case, former A.R.S. § 13–454(E)(5), presently § 13–703(F)(5)—the defendant committed the offense in expectation of the receipt of anything of pecuniary value, and former A.R.S. § 13–454(E)(6), presently § 13–703(F)(6)—the defendant committed the offense in an especially heinous, cruel, or depraved manner. We have already independently reviewed each of these findings, supra, and have stated our opinion that each of these aggravating circumstances was indeed present in the instant case. We need not, however, rely on these additional findings. As we have stated above, the other aggravating circumstances found at the original sentencing are sufficiently grave to support our result.

In mitigation, the trial judge found the statutory mitigating circumstance of former A.R.S. § 13–454(F)(1), presently § 13–703(G)(1), as discussed above, that defendant's capacity to appreciate the wrongfulness of his conduct or to conform his conduct to the law was significantly impaired, but not so impaired as to constitute a defense to prosecution. We believe that the evidence, although somewhat equivocal, supports this finding of the sentencing judge. The record reflects that defendant turned to drugs at about the age of thirteen, in order to escape the daily pressures of his home environment, and used drugs continuously for a period of over nine years. There was medical testimony that this continuous use of drugs likely impaired defend-

---

**2.** We have held that our death penalty statute is not a recidivist or enhancement statute, the purpose of which is to serve as a warning to convicted criminals and encourage their reformation. Rather,

"We have stated that the 'purpose of an aggravation/mitigation hearing is to determine the character and propensities of the defendant. * * * Revelation of subsequent lawless acts of violence would help to attain the objectives of the sentencing statute.' *State v. Valencia,* 124 Ariz. 139, 141, 602 P.2d 807, 809 (1979)."

*Steelman II, supra,* 126 Ariz. at 25, 612 P.2d at 481.

Convictions entered prior to a sentencing hearing may thus be considered regardless of the order in which the underlying crimes occurred, *State v. Jordan, supra,* 126 Ariz. at 287, 614 P.2d at 829, or the order in which the convictions were entered. *State v. Valencia, supra,* 124 Ariz. at 141, 602 P.2d at 809.

Any language suggesting the contrary in *State v. Ortiz, supra,* 131 Ariz. at 211, 639 P.2d at 1036, is hereby disapproved. In *Ortiz,* we found the trial court erred in considering a contemporaneous conviction for conspiracy to commit murder as aggravation for the murder. This exclusion from consideration is best understood as having been required because both convictions arose out of the same set of events.

ant's volitional capabilities, although it appears he can distinguish right from wrong and can exercise some control over his behavior. It thus appears that defendant's mental capabilities were significantly, but only partially, impaired.

As additional mitigation defendant has offered evidence that he had an unhappy childhood, in which his father was very demanding of achievement and gave him little approval or encouragement. He explains his turn to drugs as largely motivated by his desire to escape this parental pressure. As the United States Supreme Court has noted, "Evidence of a difficult family history and of emotional disturbance is typically introduced by defendants in mitigation." *Eddings v. Oklahoma,* supra, 455 U.S. at 115, 102 S.Ct. at 876, 71 L.Ed.2d at 11 (citation omitted). While the high court stated that such evidence is "particularly relevant" in the case of a minor, it is suggested that relatively less weight may be accorded such evidence for an adult offender. Id. We agree. Although the evidence is relevant and has been considered in mitigation, we ascribe to adult offenders such as defendant a greater degree of personal responsibility for their actions than to minors involved in crime. Defendant has also presented in mitigation evidence of his favorable adjustment to prison.

We feel that the mitigation offered by defendant Gretzler is not sufficiently substantial to outweigh the aggravating circumstances and call for leniency. We feel compelled to comment that the crime on which defendant's previous convictions are based, the cold blooded mass murder of nine persons, including the shooting of sleeping children as they lay in their beds, is more than sufficiently offensive to place the defendant well above the norm of first degree murderers. The mitigation evidence presented by defendant Gretzler is not of sufficient magnitude to outweigh the aggravating circumstances. The death sentence is appropriate in the instant case.

PROPORTIONALITY REVIEW

■ In addition to making an independent determination of the propriety of sentence in each capital case, the court also conducts a "proportionality review" to determine "whether the sentences of death are excessive or disproportionate to the penalty imposed in similar cases, considering both the crime and the defendant." *State v. Richmond,* supra, 114 Ariz. at 196, 560 P.2d at 51. *Accord State v. Ortiz,* supra, 131 Ariz. at 206–07, 639 P.2d at 1031–32. This type of review was cited with approval by the United States Supreme Court in *Gregg v. Georgia,* supra, 428 U.S. at 204–06, 211–12, 223–24, 96 S.Ct. at 2939–40, 2943, 2948–49, 49 L.Ed.2d at 891–93, 895–96, 902–03, and was recently held to be required within the Ninth Circuit by *Harris v. Pulley,* 692 F.2d 1189, 1196–97 (9th Cir.1982).

We initially note that defendant Gretzler's sentence is identical to the sentence received by his accomplice Steelman. In *Steelman II,* supra, Willie Steelman was also sentenced to death for his participation in the Sandberg killings. The same aggravating circumstances based on the same underlying facts were found as to Steelman (except that the pecuniary gain circumstance was not relied on because Steelman's resentencing predated *State v. Clark,* discussed supra). In mitigation, the judge also found that Steelman's mental capabilities were significantly impaired, on medical testimony somewhat stronger than that introduced in the present case. We found, however, that the aggravation outweighed the mitigation and affirmed the death sentence, consistent with our current resolution.

Another similar case is presented by the decisions in *State v. Tison (Ricky, Raymond),* supra, which also involved a multiple murder in the course of flight from the law. The same statutory aggravating circumstances found in the instant case were also found to be present there. See 129 Ariz. at 542–44, 633 P.2d at 351–53. (In mitigation these defendants argued that another member of the gang actually pulled the trigger.) The Tison brothers also received the death penalty for their participation in these crimes on facts closely resembling the present case.

In addition, we have considered the following cases, which we find to contain resolutions proportional to the present case: *State v. Clark,* supra; *State v. Jordan,* supra; *State v. Ceja,* supra; *State v. Evans,* 120 Ariz. 158, 584 P.2d 1149 (1978), sentence aff'd 124 Ariz. 526, 606 P.2d 16 (1980), cert. denied 449 U.S. 891, 101 S.Ct. 252, 66 L.Ed.2d 119 (1980). In each of these cases the defendant both robbed and murdered their victims, and received the death penalty based on one or more of the aggravating circumstances found in the instant case, and no other aggravating circumstances.

We further find that the disposition in the instant case is not disproportionate to cases such as *State v. Watson* and *State v. Valencia,* discussed supra, in which we held that leniency was called for in light of more compelling mitigating circumstances than were present here.

We have examined the entire record for fundamental error pursuant to A.R.S. § 13–4035, and find none.

The sentence of death is affirmed.

HOLOHAN, C.J., and HAYS and FELDMAN, JJ., concur.

GORDON, Vice Chief Justice (concurring in part and dissenting in part):

I agree that the trial court properly found three aggravating circumstances—previous convictions of another offense for which life imprisonment or death was impossible, previous conviction of a felony involving the threat or use of violence, and that the defendant committed the offense in an especially heinous, cruel or depraved manner. I also agree that no mitigating circumstances existed sufficiently substantial to call for leniency. Therefore, I concur in the correctness of the imposition of the sentence of death in this matter. However, to be faithful to my position in *State v. Clark,* 126 Ariz. 428, 616 P.2d 888 (1980), I cannot agree with the majority's interpretation of the aggravating circumstance concerning pecuniary gain.