**William Lyle WORATZECK, Petitioner–Appellant,**

v.

**Terry STEWART, Director, Department of Corrections, Respondent–Appellee.**

**No. 94–99009.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted June 14, 1995.

Submission Deferred June 21, 1995 and Aug. 18, 1995.

Submitted Sept. 17, 1996.

Decided Sept. 24, 1996.

David J. Burman, Perkins Coie, Seattle, WA, for petitioner-appellant.

Crane McClennen, Assistant Attorney General, Criminal Appeals Section, Phoenix, AZ, for respondent-appellee.

Before WALLACE, FARRIS, and BOOCHEVER, Circuit Judges.

### OPINION

WALLACE, Circuit Judge:

Woratzeck, an Arizona state prisoner sentenced to death, appeals from the district court's denial of his petition for writ of habeas corpus. The district court had jurisdiction pursuant to 28 U.S.C. § 2254. We have jurisdiction under 28 U.S.C. §§ 1291 and 2253, and we affirm.

### I

Linda Louise Leslie was a 36–year–old woman who was physically and mentally disabled due to Huntington's disease. She lived in Casa Grande, Arizona, in a trailer located in a small trailer park being purchased by Woratzeck from Leslie's aunt, Medina, and Medina's brother. Although Leslie received day-to-day assistance from several friends, Medina made the monthly rental payments to Woratzeck for Leslie's trailer. In February 1980, Woratzeck fell over $2,000 behind in his payments to the Medinas for the trailer park property, and Medina therefore withheld payment of the February rent on Leslie's trailer.

On March 6, 1980, Leslie was killed inside her trailer and approximately $107 was taken from her. The medical examiner testified that the assailant stabbed Leslie three times in the chest and abdomen, strangled her, and delivered two devastating blows to her head. Her trailer was then lit on fire.

Woratzeck was indicted by the Pinal County Grand Jury for armed robbery, burglary, arson, and first-degree felony-murder. He was convicted by a jury of first-degree felony-murder, armed robbery, and burglary, but was acquitted on the arson count. The sentencing judge found two aggravating circumstances and no mitigating ones and sentenced Woratzeck to death. The Arizona Supreme Court affirmed the conviction and sentence of death. *State v. Woratzeck*, 134 Ariz. 452, 657 P.2d 865 (1982) (*Woratzeck I*). The Arizona trial court denied Woratzeck's motion for post-conviction relief, and the Arizona Supreme Court denied review.

Thereafter, Woratzeck's petition in federal district court for a writ of habeas corpus was denied, and we affirmed. *Woratzeck v. Ricketts*, 820 F.2d 1450 (9th Cir.1987) (*Woratzeck II*). The United States Supreme Court granted certiorari, vacated our judgment, and remanded for further consideration in light of *Maynard v. Cartwright*, 486 U.S. 356, 108 S.Ct. 1853, 100 L.Ed.2d 372 (1988). *Woratzeck v. Ricketts*, 486 U.S. 1051, 108

S.Ct. 2815, 100 L.Ed.2d 916 (1988). We, in turn, vacated the district court's judgment and remanded the case to the district court with instructions to consider *Maynard* and *Adamson v. Ricketts*, 865 F.2d 1011 (9th Cir.1988) (en banc), *cert. denied*, 497 U.S. 1031, 110 S.Ct. 3287, 111 L.Ed.2d 795 (1990). *Woratzeck v. Ricketts*, 859 F.2d 1559 (9th Cir.1988). The district court ordered additional briefing, including a discussion on the ramifications of two intervening Supreme Court decisions, *Walton v. Arizona*, 497 U.S. 639, 110 S.Ct. 3047, 111 L.Ed.2d 511 (1990) (*Walton*), and *Lewis v. Jeffers*, 497 U.S. 764, 110 S.Ct. 3092, 111 L.Ed.2d 606 (1990) (*Jeffers*). *Woratzeck v. Lewis*, 863 F.Supp. 1079, 1083 (D.Ariz.1994) (*Woratzeck III*). After considering this additional authority, the district court again denied Woratzeck relief on all of his pending habeas claims. *Id.* at 1098.

While Woratzeck's appeal from the district court's judgment was pending, the Arizona Supreme Court issued a stay of execution in *State v. Mata*, No. CR–77–4104–AP/PC (Ariz. July 6, 1995), to determine whether "defendants ... who were sentenced to death prior to" *State v. Gretzler*, 135 Ariz. 42, 659 P.2d 1 (*Gretzler*), *cert. denied*, 461 U.S. 971, 103 S.Ct. 2444, 77 L.Ed.2d 1327 (1983), "must or should be resentenced when the statutory aggravating circumstance of especially cruel, heinous, or depraved ... was used, in whole or part, to death-qualify the defendant." Because Woratzeck and Mata were similarly situated, we deferred submission "[t]o ensure that Woratzeck receive[d] the same treatment as Mata." The Arizona Supreme Court recently lifted its temporary stay of execution, *State v. Mata*, 185 Ariz. 319, 916 P.2d 1035 (1996) (en banc) (*Mata*), and Mata was executed on August 22, 1996.

Also during the pendency of Woratzeck's appeal, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 (Act), 142 Cong. Rec. H3305–01 (1996) (to be codified at 28 U.S.C. § 2261). We do not decide whether the Act retroactively applies to Woratzeck's appeal. Even if it does, it would not enhance his ability to obtain federal habeas corpus relief. *See Williams v. Calderon*, 83 F.3d 281, 284 (9th Cir.1996).

 The district court's issuance or denial of habeas corpus relief is reviewed de novo. *Sanders v. Ratelle*, 21 F.3d 1446, 1451 (9th Cir.1994). State court findings of fact are entitled to deference, and the district court's findings of fact are reviewed for clear error. *Strickland v. Washington*, 466 U.S. 668, 698, 104 S.Ct. 2052, 2070, 80 L.Ed.2d 674 (1984) (*Strickland*).

Woratzeck raises six principal issues on appeal: (1) whether the aggravating factor of "especially cruel, heinous, or depraved," which the Arizona courts relied on when sentencing him to death, was unconstitutionally vague at the time he was sentenced; (2) whether the sentencing court failed to consider mitigating evidence in the record; (3) whether a second aggravating factor found in his sentencing proceeding failed to channel the discretion of the sentencer when applied to felony-murder convictions such as Woratzeck's; (4) whether both aggravating factors found at sentencing were established beyond a reasonable doubt; (5) whether the district court should have granted him an evidentiary hearing on his ineffective assistance of counsel claim; and (6) whether his sentence of death violates the Eighth Amendment. We address each argument in turn.

## II

Woratzeck was sentenced to death based on the finding of two aggravating factors: (1) that the crime he committed was "especially heinous, cruel or depraved," and (2) that the crime was committed "as consideration for the receipt, or in expectation of the receipt, of anything of pecuniary value." Ariz.Rev. Stat. §§ 13–703(F)(5), (6) (1993). Woratzeck's first argument on appeal concerns aggravating factor (F)(6): that his crime was committed in an "especially heinous, cruel or depraved manner."

 Woratzeck contends that at the time he was sentenced to death, aggravating factor (F)(6) was unconstitutionally vague. Because Arizona is a "weighing" state, "it is constitutional error for the sentencer to give weight to an unconstitutionally vague aggravating factor, even if other, valid aggravating factors obtain." *Richmond v. Lewis*, 506

U.S. 40, 46, 113 S.Ct. 528, 534, 121 L.Ed.2d 411 (1992) (Richmond). However, the relevant time period at which to examine Arizona law is not, as Woratzeck asserts, the time he was sentenced in 1980, but rather at the time the Arizona Supreme Court affirmed his death sentence in *Woratzeck I* on December 17, 1982. That date is relevant because "even if a trial judge ... applies an improper construction [of an aggravating factor], the Constitution does not necessarily require that a state appellate court vacate a death sentence based on that factor. Rather ... a state appellate court may itself determine whether the evidence supports the existence of the aggravating circumstance as properly defined." *Walton,* 497 U.S. at 653–54, 110 S.Ct. at 3057.

Although *Maynard* and *Adamson* cast doubt on the constitutional validity of Arizona's factor (F)(6), the United States Supreme Court more recently held in *Walton* and *Jeffers* that factor (F)(6), as construed by the Arizona Supreme Court in *Gretzler,* is not unconstitutionally vague. *Walton,* 497 U.S. at 652–55, 110 S.Ct. at 3056–58; *Jeffers,* 497 U.S. at 777–78, 110 S.Ct. at 3100–01.

Woratzeck recognizes that the Supreme Court has upheld factor (F)(6). Woratzeck argues, however, that factor (F)(6) was not adequately narrowed until the Arizona Supreme Court decided *Gretzler. Gretzler,* which contains an extensive analysis of factor (F)(6), was decided after *Woratzeck I* and before *Walton* and *Jeffers. Gretzler* analyzed past factor (F)(6) cases and explained that the term "cruelty" in factor (F)(6) emphasizes the "victim's suffering and feelings" whereas the concepts of "heinous" and "depraved" in factor (F)(6) "involve a killer's vile state of mind at the time of the murder." 659 P.2d at 10. *Gretzler* then set forth five criteria to guide a sentencing court's determination of whether a killing was committed in a heinous or depraved manner: (1) the apparent relishing of the murder by the killer; (2) the infliction of gratuitous violence on the victim beyond the point necessary to complete the object of the crime or even to kill; (3) the needless mutilation of the victim;

(4) the senselessness of the crime; and (5) the helplessness of the victim. *Id.* at 11.

Woratzeck insists that *Gretzler* did not merely summarize and clarify Arizona law, but was instead the watershed case that narrowed factor (F)(6) and allowed the Supreme Court to uphold it against vagueness challenges in *Walton* and *Jeffers.* The Arizona Supreme Court, however, has explained that "*Gretzler* did not present a new, narrower interpretation of the (F)(6) factor, but simply a digest of the previously legitimate applications of the factor." *Mata,* 916 P.2d at 1040. The court explained that "*Gretzler* did not present sentencing judges with 'new' guidance. It was simply an easy reference point; a digest of the previous application of the (F)(6) factor." *Id.* at 1044–45. We agree with the Arizona Supreme Court's interpretation of *Gretzler.* In *Woratzeck,* the Arizona Supreme Court affirmed the trial court's (F)(6) finding, relying on its opinion in *State v. Ceja,* which held that the sentencer could predicate (F)(6) aggravation on a finding of "additional violence." 115 Ariz. 413, 565 P.2d 1274, 1278 (1977). It found—in language mirroring *Ceja*'s—that "[t]he violence committed against Linda Leslie was certainly beyond the point necessary to fulfill a plan to steal and even to kill." *Ceja*'s "additional violence" narrowing construction was the source of *Gretzler*'s "gratuitous violence" narrowing construction. *See Gretzler,* 659 P.2d at 11, *citing State v. Ceja,* 126 Ariz. 35, 612 P.2d 491 (1980). The Supreme Court has affirmed *Gretzler*'s "gratuitous violence" narrowing construction on two occasions, first in *Jeffers,* 497 U.S. at 770–71, 774–78, 110 S.Ct. at 3096–97, 3098–101 (1990), and again in *Richmond,* 506 U.S. at 51, 113 S.Ct. at 536–37 (1992) ("murderer who intentionally drives a car over his victim twice arguably commits 'gratuitous violence' within the meaning of *Gretzler,* whether or not he knows that the victim is dead after the first pass"). There is no distinction between the "additional violence" narrowing construction applied by the Arizona Supreme Court in *Ceja* and *Woratzeck* and the "gratuitous violence" narrowing construction approved by the Supreme Court in *Jeffers* and *Richmond.*

## III

Woratzeck's second argument is that the sentencing court failed to consider mitigating evidence in the record. Woratzeck relies only on the mitigating factors listed in the presentence report and to his alcohol consumption on the day of the murder. The sentencing judge stated:

> The defendant and his counsel were further given the opportunity to establish the existence of any circumstances in mitigation as set forth in [A.R.S. § ] 13–703(G) ... and as allowed in *State of Arizona [v.] Watson* [120 Ariz. 441, 586 P.2d 1253 (1978) (*Watson*)]. Additional testimony was offered by the defendant, admitted in evidence and considered by the Court. In addition, the Court reviewed the trial testimony and statements to the Casa Grande police by Mr. Dino Marcanado, as requested by the defendant.

■ Woratzeck points to no specific evidence not considered by the sentencing court. He argues, instead, that, even though the intoxication level did not rise to a level high enough to qualify as a statutory mitigating factor under section 13–703(G), the evidence of his intoxication should have been and was not considered as a nonstatutory mitigating factor. However, *Watson,* cited by the sentencing court, holds that all nonstatutory evidence is to be considered. It is therefore clear that the judge considered nonstatutory evidence and determined that Woratzeck's alcohol consumption did not constitute a mitigating circumstance.

## IV

Woratzeck's third claim is that aggravating factor (F)(5)—that the crime was committed with the expectation of receiving anything of pecuniary value—failed in this case to channel the discretion of the sentencer. "To pass constitutional muster, a capital sentencing scheme must genuinely narrow the class of persons eligible for the death penalty and must reasonably justify the imposition of a more severe sentence on the defendant compared to others found guilty of murder." *Lowenfield v. Phelps,* 484 U.S. 231, 244, 108 S.Ct. 546, 554, 98 L.Ed.2d 568 (1988) (internal quotation omitted).

Woratzeck argues that factor (F)(5) is *automatically* found in cases where one is convicted of robbery felony-murder. Woratzeck states:

> Because the (F)(5) factor means that robbery will cause the defendant to be a first-degree murderer *and* eligible for the death penalty, the class of persons who receive the death penalty has not been genuinely narrowed. Instead, *all* those who kill without premeditation in the course of a robbery are automatically death-eligible and will be executed in the absence of sufficient mitigating factors.... For a felony murder committed during the course of a robbery, the State does not have to establish *any* additional aggravating circumstance at all: the pecuniary gain factor does that for them.

(Emphasis in brief.)

■ An examination of the application of factor (F)(5) in Arizona does not support Woratzeck's argument. In *State v. Greenway,* 170 Ariz. 155, 823 P.2d 22 (1991), the Arizona Supreme Court considered whether (F)(5) "amounts to double-counting." The Arizona Supreme Court concluded that there was no double-counting, because to "prove robbery, the state must show a *taking* of property from the victim; to prove pecuniary gain, the state must show the actor's *motivation* was the expectation of pecuniary gain. Proving a taking in a robbery does not necessarily prove the motivation for a murder." *Id.* at 31 (emphasis in original, internal citations omitted). *Greenway* illustrates why Woratzeck's claim fails. It is not true that everyone convicted of robbery felony-murder is automatically death eligible. The State needs to prove at sentencing that the killing was done with the expectation of pecuniary gain. Even if it is true that under many circumstances a person who kills in the course of a robbery is motivated to do so for pecuniary reasons, that is not necessarily so. *Cf. State v. Smith,* 146 Ariz. 491, 707 P.2d 289, 299 (1985) ("Under the facts of *this* case (but certainly not of all robberies) the commission of the killing necessarily carried with it the expectation of pecuniary gain.") (em-

phasis in original). A defendant is free to argue that the killing was motivated by reasons unrelated to pecuniary gain.

Because aggravating factor (F)(5) is not automatically applicable to someone convicted of robbery felony-murder, the factor serves to narrow the class of death-eligible persons sufficiently, so long as that factor is not unconstitutionally vague and does not result in irrational sentencing. The factor is not unconstitutionally vague. Woratzeck also argues, however, that factor (F)(5) results in irrational sentencing, by making "automatically eligible for death those who did not intend to kill during their felony, while simultaneously protecting from death those premeditated killers (who did not also rob) having no other aggravating factors."

Although factor (F)(5) does not automatically make someone convicted of robbery felony-murder death eligible, the factor might still be unconstitutional if it fails to foreclose the "wanton and freakish" imposition of the death penalty. *See United States v. Cheely,* 36 F.3d 1439, 1445 (9th Cir.1994) (holding certain death penalty provisions of the federal mail bomb statute unconstitutional).

In *Tison v. Arizona,* 481 U.S. 137, 147, 107 S.Ct. 1676, 1682–83, 95 L.Ed.2d 127 (1987), the Supreme Court made it clear that sentencing someone to death for robbery felony-murder is not impermissible. *Tison* examined Arizona's death penalty provisions in the felony-murder context and held that the "reckless disregard for human life implicit in knowingly engaging in criminal activities known to carry a grave risk of death represents a highly culpable mental state, a mental state that may be taken into account in making a capital sentencing judgment when that conduct causes its natural, though also not inevitable, lethal result." *Id.* at 157–58, 107 S.Ct. at 1688. Woratzeck's conviction for robbery felony-murder—when coupled with the findings of aggravating circumstances present here—sufficiently meets the culpability requirements that make his crime one for which death is a constitutionally permissible penalty.

That someone who intentionally kills might not be sentenced to death in Arizona does not mean that Woratzeck's death sentence is unconstitutional. If an intentional killing is done for pecuniary gain, then death is also a permitted penalty. Woratzeck's first-degree felony-murder conviction is treated no differently from any first-degree conviction for intentional killing and neither crime alone can result in death absent a finding of one or more aggravating circumstances. The State of Arizona could rationally conclude that a defendant's motive to murder more accurately reflects his relative culpability than whether the murder is done with an affirmative intent to kill or "merely" an utter disregard for whether the victim lives or dies. As the Supreme Court adeptly recognized in *Tison,* "the robber who shoots someone in the course of the robbery, utterly indifferent to the fact that the desire to rob may have the unintended consequence of killing the victim as well as taking the victim's property ... may [possess a mental state] every bit as shocking to the moral sense as an 'intent to kill.'" *Id.* at 157, 107 S.Ct. at 1688. Factor (F)(5) sufficiently channels the sentencer's discretion and does not result in unconstitutionally disproportionate imposition of the death penalty when applied to felony-murder defendants.

Finally, when analyzing the factor (F)(5) claim, the district court asserted that a double jeopardy violation had been alleged. It then rejected that claim. *See Woratzeck III,* 863 F.Supp. at 1088. Woratzeck contends that this misconstrued his argument and, indeed, no mention of the Double Jeopardy Clause is made on appeal. To the extent that any double jeopardy violation had been asserted, it has apparently been abandoned. We express no opinion concerning the district court's view on the issue.

## V

Woratzeck's fourth claim is that aggravating factors (F)(5) and (F)(6) were not found to exist beyond a reasonable doubt. We do not need to resolve the question whether federal law requires all aggravating circumstances in death penalty cases to be proven beyond a reasonable doubt. Even if

federal law requires aggravating circumstances to be proven beyond a reasonable doubt, that standard was reached in this case. *See State v. Jordan,* 126 Ariz. 283, 614 P.2d 825 (*Jordan*), *cert. denied,* 449 U.S. 986, 101 S.Ct. 408, 66 L.Ed.2d 251 (1980); *Clark v. Ricketts,* 958 F.2d 851, 860 (9th Cir.1991) (*Clark*), *cert. denied,* 506 U.S. 838, 113 S.Ct. 117, 121 L.Ed.2d 73 (1992). Woratzeck was sentenced, and the Arizona Supreme Court independently reviewed that sentence, after *Jordan.* In *Jordan,* the Arizona Supreme Court concluded that the state must prove the existence of aggravating circumstances beyond a reasonable doubt. *Jordan,* 614 P.2d at 828. In *Clark,* we held that since the Arizona Supreme Court had "independently reviewed the facts ... it is ludicrous to suggest the court did not find the aggravating circumstances established according to the standard it so recently announced in *Jordan.*" *Clark,* 958 F.2d at 860. The same logic applies here. We presume that the Arizona Supreme Court properly applied its own law, *Walton,* 497 U.S. at 653, 110 S.Ct. at 3057, and found the aggravating circumstances beyond a reasonable doubt as required by *Jordan.*

█ The only question, therefore, is whether a rational factfinder could have concluded on this record that Woratzeck committed the crime in a heinous or depraved manner or with the expectation of the receipt of something of pecuniary value. We have already held that the finding of heinousness and depravity is "fairly supported by the record." *Woratzeck II,* 820 F.2d at 1458. Evidence showed that Woratzeck's actions were beyond the point necessary to rob or even to kill. Leslie was stabbed three times, strangled, and then struck twice with a blunt object on the head. The strangulation broke the bones in the front of her neck. One of the stab wounds severed the main artery to the heart and penetrated the liver. The injury to the head forced bone matter into the brain. There is no serious question that Leslie was dead when Woratzeck left. The evidence clearly supports a finding that the crime was committed in a heinous and depraved manner.

█ As for the pecuniary gain factor, the evidence examined by the Arizona Supreme Court is sufficient to allow a rational factfinder to conclude that Woratzeck was motivated to kill by the prospect of pecuniary gain. Not only was Woratzeck convicted of robbery, but evidence showed that Woratzeck was having severe financial problems and believed that Leslie owed him money. The evidence supports the finding of aggravating factor (F)(5).

VI

Woratzeck next argues that he was entitled to an evidentiary hearing on his ineffective assistance of counsel claim. Woratzeck asserts that his trial counsel was ineffective because he failed to investigate mitigating evidence or present witnesses at the sentencing hearing.

In our vacated opinion, we previously held that Woratzeck's counsel was not ineffective in this regard. *Woratzeck II,* 820 F.2d at 1456. We vacated our prior judgment to allow the district court to consider recent Supreme Court and Ninth Circuit authority concerning a different issue.

█ We need not revisit whether Woratzeck's counsel made a sufficient effort to contact possible mitigating witnesses and whether his decision not to call witnesses at the sentencing proceedings constituted deficient performance, because the evidence presented to us indicates that Woratzeck was not prejudiced by the failure to make such further investigation or to call additional witnesses. We hold that even if Woratzeck's lawyer had contacted additional family members, there is not a reasonable probability that Woratzeck would have received a life sentence. *See Strickland,* 466 U.S. at 694, 104 S.Ct. at 2068. The witnesses at the Rule 32 proceeding indicated that if asked, they would have testified as to Woratzeck's history of nonviolence, his positive relationships with his family members, his problems with alcohol, and his failed attempt to resuscitate his father. All of this information was in the presentence report, which the sentencing court considered for mitigation purposes. We agree with the Rule 32 court's determination that no "significant mitigating circum-

stances could have been presented which [were] not contained in the record."

## VII

Woratzeck's final claim is that his sentence violates the Eighth Amendment because Arizona law arbitrarily selected him for the death penalty. In light of our conclusions regarding the proper application of factors (F)(5) and (F)(6), Woratzeck's argument fails. *See Walton,* 497 U.S. at 655–56, 110 S.Ct. at 3058 (A court that has "just concluded that the challenged factor[s] [have] been construed ... in a manner that furnishes sufficient guidance to the sentencer ... lawfully may presume that [the] death sentence was not wantonly and freakishly imposed—and thus that the sentence is not disproportionate within any recognized meaning of the Eighth Amendment.") (internal quotations omitted).

AFFIRMED.