SUPREME COURT OF ARIZONA

| | | |
|---|---|---|
| STATE OF ARIZONA, | ) | Arizona Supreme Court |
| | ) | No. CR-99-0536-AP |
| Appellee, | ) | |
| | ) | Maricopa County |
| v. | ) | Superior Court |
| | ) | No. CR-96-04691 |
| ANTOIN JONES, | ) | |
| | ) | |
| Appellant. | ) | **S U P P L E M E N T A L** |
| | ) | **O P I N I O N** |

Appeal from the Superior Court in Maricopa County
No. CR-96-04691
The Honorable Stephen A. Gerst, Judge

**DEATH SENTENCE VACATED; REMANDED FOR RESENTENCING**

---

Janet A. Napolitano, Arizona Attorney General,          Phoenix
     By:  Kent E. Cattani, Chief Counsel,
          Capital Litigation Section
     and: Robert L. Ellman, Assistant Attorney General
          James P. Beene, Assistant Attorney General
          John P. Todd, Assistant Attorney General
          Bruce M. Ferg, Assistant Attorney General     Tucson
Attorneys for Appellee

James J. Haas, Maricopa County Public Defender          Phoenix
     By:  Stephen R. Collins, Deputy Public Defender
          Edward F. McGee, Deputy Public Defender
Attorneys for Appellant Antoin Jones

---

**R Y A N**, Justice

¶1      The sole issue before us is whether reversible error occurred when a trial judge sentenced Antoin Jones to death under a procedure found unconstitutional in *Ring v. Arizona,* 536 U.S. 584 (2002) (*Ring II*).  Based on our review of the record, we cannot

conclude that the error in this case was harmless.  Therefore, we remand for resentencing.

## I.

## A.

¶2      On December 16, 1997, a jury found Antoin Jones guilty of first degree premeditated murder, kidnapping of a minor under the age of fifteen, and two counts of sexual assault of a minor under the age of fifteen.  *State v. Jones*, 203 Ariz. 1, 3, ¶ 1, 49 P.3d 273, 275 (2002).  The victim in this case, a twelve-year-old girl, disappeared from a park in Glendale, Arizona on April 16, 1996.  Her body was found the next day in a dumpster behind an abandoned bar in Phoenix.  The victim's hands were bound behind her back with a sock, and another sock was tied around her neck.  She was covered in blood and clothed only in a t-shirt and training bra, which had been pushed up over her breasts.

¶3      The autopsy disclosed that the victim died as a result of blunt force trauma to the head.  Her severely shattered skull had at least nine separate injuries consistent with the curvature of a socket wrench.  She also had two stab wounds in her neck and abrasions and scrapes on her face and chest.  The victim had additional injuries indicating she had been raped and sodomized.

¶4      Following the jury's verdict, the trial judge conducted a sentencing hearing on the first degree murder conviction under former Arizona Revised Statutes ("A.R.S.") section 13-703(B)(Supp.

2002), *amended by* 2002 Ariz. Sess. Laws, 5th Spec. Sess., ch. 1 § 1. He found two aggravating circumstances: (1) the crime was committed in an especially heinous, cruel, or depraved manner, and (2) the age of the victim. *See* A.R.S. § 13-703(F)(6) and (9). The trial judge found no statutory mitigating circumstances and, although he found some non-statutory mitigating circumstances, he concluded that the mitigating factors were not sufficiently substantial to call for leniency. The trial judge consequently sentenced Jones to death on the first degree murder conviction.[1]

**B.**

¶5        In *Ring II*, the United States Supreme Court held that Arizona's capital sentencing scheme violated the right to a jury trial guaranteed by the Sixth Amendment to the United States Constitution. 536 U.S. at 609. On mandatory appeal, we affirmed Jones' convictions and all sentences except the sentence of death. *Jones*, 203 Ariz. at 13, ¶ 48, 49 P.3d at 285. We deferred all discussion of death penalty sentencing issues in this case pending resolution of the *Ring II* issue. *Id.* We also noted that we had consolidated all death penalty cases in which this court had not yet issued a direct appeal mandate, including Jones', to determine whether *Ring II* required this court to reverse or vacate the

---

[1]    Jones received the following sentences for his other crimes:  twenty-four years for the kidnapping conviction, to be served consecutively to the death sentence; two concurrent twenty-seven year sentences for the sexual assault convictions, to be served consecutively to the kidnapping sentence.

-3-

defendants' death sentences. *Id.*

¶6        In *State v. Ring,* 204 Ariz. 534, ___, ¶ 53, 65 P.3d 915, 936 (2003) (*Ring III*), we concluded that we will examine a death sentence imposed under Arizona's superseded capital sentencing statute for harmless error.  Thus, this supplemental opinion only addresses whether any *Ring II* error in this case was harmless beyond a reasonable doubt.

## II.

### A.  Aggravating Circumstances

### 1.   A.R.S. § 13-703(F)(9):  Age of the Victim

¶7        One of the aggravating circumstances found by the trial judge was that the "defendant was an adult at the time the offense was committed . . . and the murdered person was under fifteen years of age." A.R.S. § 13-703(F)(9).  Jones did not challenge this finding on direct appeal.

¶8        In *Ring III* we held that certain aggravating factors can be implicit in a jury's verdict.  204 Ariz. at ___, ¶ 74, 65 P.3d at 940.  Specifically, we held it is harmless error for the trial judge to find the F(9) aggravator when "the jury convicts the defendant of first degree murder and another crime committed against the murder victim in which the age of the victim constitutes a substantive element of the crime." *Id.* at ___, ¶ 83, 65 P.3d at 942.

¶9        In addition to convicting Jones of first degree murder,

-4-

the jury also convicted him of one count of kidnapping of a minor under the age of fifteen, *see* A.R.S. § 13-1304(B) (1994), and two counts of sexual assault of a minor under the age of fifteen. *See* A.R.S. § 13-1406(D) (Supp. 1997). The victim's age constituted a substantive element of each of these crimes. Thus, a jury "already found the necessary fact, age of the victim, through criminal proceedings compliant with Sixth Amendment safeguards." *Ring III*, 204 Ariz. at ___, ¶ 85, 63 P.3d at 942. Accordingly, the record establishes beyond any reasonable doubt that the aggravating circumstance of the age of the victim was proved. No reasonable jury could have found otherwise.

### 2. A.R.S. § 13-703(F)(6): Especially Heinous, Cruel or Depraved

¶10 The trial judge also found that the State proved beyond a reasonable doubt that the "defendant committed the offense in an especially heinous, cruel, or depraved manner." A.R.S. § 13-703(F)(6). The F(6) aggravator must be reviewed for harmless error. *See Ring III*, 204 Ariz. at ___, ¶¶ 44-53, 65 P.3d at 933-36. To determine if it was harmless error for a trial judge, instead of a jury, to find an F(6) aggravator, we must find beyond a reasonable doubt that no reasonable jury could have come to a different conclusion than the trial judge. *State v. Tucker,* ___ Ariz. ___, ___, ¶ 55, 68 P.3d 110, 120 (2003) (citing *State v. Bible,* 175 Ariz. 549, 588, 858 P.2d 1152, 1191 (1993)).

¶11     Jones argues that this aggravating circumstance had not been proven beyond a reasonable doubt.  He contends that neither the medical evidence nor the testimony of his girlfriend, Vanessa Odom, was sufficient to establish this circumstance.  Because A.R.S. section 13-703(F)(6) "is stated in the disjunctive, a finding of either cruelty or heinousness/depravity will suffice to establish this factor," but all three may be found.  *State v. Djerf*, 191 Ariz. 583, 595, ¶ 44, 959 P.2d 1274, 1286 (1998); *see also State v. Gretzler*, 135 Ariz. 42, 51, 659 P.2d 1, 10 (1983). In this case, the court found both cruelty and heinousness or depravity.

### a.    Cruelty

¶12     Cruelty refers to the mental and physical suffering of the victim.  *State v. Clark*, 126 Ariz. 428, 436, 616 P.2d 888, 896 (1980).  To find that a victim suffered mental anguish or physical pain, the victim must have been conscious during at least some portion of the crime and the defendant either must have known or should have known that the victim would suffer.  *State v. Trostle*, 191 Ariz. 4, 18, 951 P.2d 869, 883 (1997).

¶13     In deciding whether the murder was cruel, the trial judge principally relied on the testimony of Jones' girlfriend regarding her conversation with Jones shortly after the murder took place. At trial and on direct appeal, Jones challenged the credibility of Vanessa's testimony.  Vanessa told the police shortly after the

crime that she knew nothing about it, but later she said she had lied and testified that Jones had told her all of the details of his crime. We cannot say beyond a reasonable doubt that a reasonable jury, in determining whether the murder was cruel, would have accorded the girlfriend's testimony the same weight as did the trial judge.

¶14    Nevertheless, the independent, and largely undisputed, physical evidence in this case showed that the victim was abducted, bound, raped, sodomized, beaten over the head at least nine times, and stabbed twice in the neck. However, a forensic pathologist from the medical examiner's office was unable to fix the precise time the victim lost consciousness, conceding it was possible she had been rendered unconscious at the beginning of the assault. Unlike other cases in which we have held that binding of the victim's hands indicated she was conscious for some portion of the crime, there was no additional evidence of a struggle in this case. *Cf. Tucker*, ___ Ariz. at ___, ¶ 61, 68 P.3d at 121-22 (ligature marks around the victim's wrists indicated she had been handcuffed; disarray of room and blood spatter indicated there was a prolonged struggle); *Bible*, 175 Ariz. at 604-05, 858 P.2d at 1207-08 (nine-year-old victim's hands "were bound tightly, leaving indentations on her wrists observable more than three weeks later"). Even though the physical evidence that the victim suffered is quite strong, we cannot conclude beyond a reasonable doubt that a jury

would have found the murder to be especially cruel.  A jury could have found that the victim lost consciousness at the beginning of the assault and thus did not suffer physical pain or mental anguish sufficient to support a finding that the murder was cruel.

### b.  Especially Heinous or Depraved

¶15      Heinousness and depravity refer to the "mental state and attitude of the perpetrator as reflected in his words and actions." *Clark*, 126 Ariz. at 436, 616 P.2d at 896.  We consider five factors to determine whether a killing was "especially heinous or depraved": (1) whether the defendant apparently relished the murder; (2) whether the defendant inflicted gratuitous violence on the victim; (3) whether the defendant needlessly mutilated the victim; (4) the senselessness of the crime; and (5) the helplessness of the victim.  *Gretzler*, 135 Ariz. at 52, 659 P.2d at 11.  In addition, we have considered whether witness elimination motivated the killing.  *State v. Ross*, 180 Ariz. 598, 605, 886 P.2d 1354, 1361 (1994).  The trial court found that the evidence showed beyond a reasonable doubt that all of these factors, except for mutilation of the victim, were present in this case.

### (i)  Gratuitous Violence

¶16      Gratuitous violence is violence "clearly beyond that necessary to cause death."  *State v. Hyde*, 186 Ariz. 252, 281, 921 P.2d 655, 684 (1996).  However, when the majority of injuries result from the means used to inflict death without additional

abuse or injury, gratuitous violence may not be established. *State v. Schackart*, 190 Ariz. 238, 249, 947 P.2d 315, 326 (1997).

¶17      The victim in this case died from blunt trauma injury to her head.  The evidence indicates that the defendant struck at least nine blows to the victim's head, severely shattering her skull.  Bone fragments were visible in the victim's hair and her brain matter was exposed.  The victim had been stabbed twice in the throat and had multiple abrasions on her face and chest. In addition, the victim was sexually assaulted, both vaginally and anally.   The physical evidence clearly establishes beyond a reasonable doubt that the amount of violence used in this case was greater than that necessary to kill the victim.  *See Hyde*, 186 Ariz. at 281, 921 P.2d at 684 (finding of gratuitous violence based in part on evidence that the victims were beaten so severely that bone shattered, lacerating the brain and rendering parts of one victim's skull visible)*; see also State v. Doerr*, 193 Ariz. 56, 68, ¶¶ 56-58, 969 P.2d 1168, 1180 (1998).

### (ii) Senselessness and Helplessness

¶18      A victim is helpless when he or she is unable to resist the murder.  *State v. Cañez,* 202 Ariz. 133, 161, ¶ 108, 42 P.3d 564, 592 (2002) (citing *Hyde*, 186 Ariz. at 281, 921 P.2d at 684). At 91 pounds, 61 inches, the female victim was smaller and weaker than Jones.  He further disabled her by tying her arms behind her back with a sock.  She clearly had no chance to escape or resist

the force Jones used against her.  We have held that "[t]he killing of a helpless child is inherently senseless and demonstrates a disregard for human life, satisfying two of the five *Gretzler* factors."  *State v. Stanley*, 167 Ariz. 519, 528, 809 P.2d 944, 953 (1991).  The record here establishes beyond a reasonable doubt the helplessness of the victim and the senselessness of the murder.

¶19        A finding of either helplessness or senselessness, or both, along with at least one other *Gretzler* factor supports the conclusion that an offense was heinous or depraved.  *Gretzler*, 135 Ariz. at 52, 659 P.2d at 11.  Given the combination of the gratuitous violence inflicted, the helplessness of the victim, and the senseless of this murder, we find beyond a reasonable doubt that a jury would have found that this murder was heinous or depraved based on the physical evidence.[2]  Therefore, we hold that it was harmless error that a judge, rather than a jury, found the (F)(6) aggravator in this case.

## B.  Mitigating Circumstances

¶20        Our inquiry does not end with a review of the aggravating

---

[2]    We note that the trial judge found the relishing and witness elimination factors based primarily on the girlfriend's testimony.  We cannot say beyond a reasonable doubt that a jury would have assessed the girlfriend's credibility in the same manner as the judge.  For this reason, we do not consider these two factors in our harmless error review.

factors. We must also consider whether reversible error occurred with respect to the mitigating circumstances. *Ring III*, 204 Ariz. at ___, ¶ 104, 65 P.3d at 946. We can only affirm a capital sentence if we can conclude beyond a reasonable doubt "that no rational trier of fact would determine that the mitigating circumstances were sufficiently substantial to call for leniency." *Id.*

### A. Statutory Mitigation

¶21 Jones claimed all of the statutory mitigating factors set forth in former A.R.S. section 13-703(G).[3] The trial judge dismissed Jones's claims that, his capacity to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of law was significantly impaired, A.R.S. § 13-703 (G)(1); he was under unusual or substantial duress, *Id.* § 13-703(G)(2); his participation was relatively minor, *Id.* § 13-703(G)(3); he could not have reasonably foreseen that his conduct in the course of the commission of the offense for which he was convicted would cause, or create a grave risk of causing, death to another person, *Id.* § 13-703(G)(4); and his age at the time of the offenses was a mitigating circumstance, *Id.* § 13-703(G)(5). On appeal, Jones challenged the trial judge's finding regarding the (G)(1) mitigator.

---

[3] Redesignated as A.R.S. § 13-703(H) by Ariz. Sess. Laws 2001, ch. 260, § 1.

¶22    Section 13-703(G)(1) provides that a mitigating circumstance is established when "[t]he defendant's capacity to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of law was significantly impaired, but not so impaired as to constitute a defense to prosecution." This mitigating circumstance is written in the disjunctive and is established if either the capacity to appreciate the wrongfulness of one's conduct or the capacity to conform one's conduct to the requirements of the law is significantly impaired. *See State v. Stuard*, 176 Ariz. 589, 609, 863 P.2d 881, 901 (1993).

¶23    Jones attempted to prove the (G)(1) mitigating factor with testimony about his childhood from his mother, sister, and a mitigation expert. He also presented testimony of Dr. Susan Downs Parrish, a neuropsychologist. Dr. Parrish testified that she had interviewed Jones and determined he had a "cognitive disorder, [not] otherwise specified" that would "impair" his ability to conform his conduct to the requirements of the law and "impair" his ability to appreciate the wrongfulness of his acts. The State countered with testimony from another neuropsychologist, Dr. James Youngjohn. After reviewing Jones's previous tests, video-taped interviews, and personal letters, Dr. Youngjohn concluded that Jones had been malingering during his examination. The trial judge apparently accorded more weight to the State's expert and found no evidence of significant mental impairment for purposes of

-12-

mitigation.

¶24      Because the judge's finding rested so heavily on his assessment of witness credibility, we cannot say beyond a reasonable doubt that a reasonable jury would also conclude that Jones failed to establish the (G)(1) statutory mitigator by a preponderance of the evidence.

## 2. Non-Statutory Mitigation

¶25      Jones also presented numerous non-statutory mitigating factors. The trial judge found that Jones had proved a number of them by a preponderance of the evidence, including the following: defendant's "intellectual deficit," biographical misfortune including a dysfunctional family and upbringing, good character, social immaturity, inability to take responsibility, lack of education, cultural disorientation/alienation, difficult early teen years and prior home life, and family ties. The trial judge found that Jones failed to prove by a preponderance of the evidence the mitigating factors of residual doubt, minimal participation in the crime, lack of intent to kill, remorse, culpability of others, outcome disparity, ability to be rehabilitated, low probability of recidivism, and mental health issues. All of the non-statutory mitigating factors, whether accepted or rejected by the trial judge, depended upon an assessment of witness credibility. Under such circumstances, we cannot conclude that the error here was harmless beyond a reasonable doubt.

¶26     Therefore, on this record, we are unable to conclude that a jury faced with the same mitigating evidence, whether statutory or non-statutory, would have come to the same conclusion as the trial judge.

### III.

¶27     Because we cannot conclude that the sentencing procedure in this case resulted in harmless error, we vacate Jones's death sentence and remand for resentencing under A.R.S. sections 13-703 and -703.01 (Supp. 2002).

_____
Michael D. Ryan, Justice


CONCURRING:


_____
Ruth V. McGregor, Vice Chief Justice



_____
Rebecca White Berch, Justice

**J O N E S**, C.J., concurring in part, dissenting in part:

¶28     I concur in the result, but I respectfully dissent from the majority's conclusion that harmless error analysis is appropriate where sentencing determinations are made by the trial judge in the absence of the jury.  The right to trial by an

-14-

impartial jury is fundamental.  The sentencing phase is, of itself, a life or death matter.  Where a judge, not a jury, determines all questions pertaining to sentencing, I believe a violation of the Sixth Amendment to the Constitution of the United States has occurred.  In the aftermath of the Supreme Court's decision in *Ring v. Arizona,* 536 U.S. 584, 122 S. Ct. 2428 (2002) *(Ring II),* the absence of the jury in the sentencing phase of a capital trial necessarily amounts to structural error.  I would remand the case for resentencing, simply on the basis of the Sixth Amendment violation.  *See State v. Ring*, 204 Ariz. 534, ___, ¶¶ 105-14, 65 P.3d 915, 946-48 (2003)(Feldman, J., concurring in part, dissenting in part) (*Ring III*).

_____
Charles E. Jones, Chief Justice