SUPREME COURT OF ARIZONA

| | |
|---|---|
| STATE OF ARIZONA, | ) Arizona Supreme Court |
| | ) No. CR-00-0544-AP |
| Appellee, | ) |
| | ) Maricopa County Superior |
| v. | ) Court No. CR97-03949 |
| | ) |
| LEROY D. CROPPER, | ) |
| | ) **S U P P L E M E N T A L** |
| Appellant. | ) **O P I N I O N** |
| | ) |

Appeal from the Superior Court of Maricopa County
The Honorable David R. Cole, Judge

**REMANDED FOR RESENTENCING**

_____

Janet Napolitano, Former Attorney General                Phoenix
Terry Goddard, Attorney General
        by    Kent E. Cattani, Chief Counsel,
              Capital Litigation Section
        and   Robert L. Ellman
        and   James P. Beene
        and   John P. Todd
        and   Bruce M. Ferg                              Tucson
Assistant Attorneys General
Attorneys for the State of Arizona

Thomas A. Gorman                                         Flagstaff
     and
David I. Goldberg                                        Flagstaff
Attorneys for Leroy D. Cropper

_____

M c G R E G O R, Vice Chief Justice

¶1      The only issue before us is whether reversible error occurred when a trial judge sentenced Leroy D. Cropper to death under a procedure that violated the right to a jury trial under the Sixth Amendment to the United States Constitution. *See Ring v. Arizona*, 536 U.S. 584, 609, 122 S. Ct. 2428, 2443 (2002) (*Ring II*).

We have jurisdiction pursuant to Article VI, Section 5.3 of the Arizona Constitution and Arizona Revised Statutes (A.R.S.) section 13-4031 (2001). Based on our review of the record, we cannot conclude that the Sixth Amendment violation constituted harmless error.

## I.

¶2 In *Ring II*, the United States Supreme Court held that Arizona's former capital sentencing scheme violated the Sixth Amendment. *Ring II*, 536 U.S. at 609, 122 S. Ct. at 2443. The Court declared that "[c]apital defendants, no less than non-capital defendants . . . are entitled to a jury determination of any fact on which the legislature conditions an increase in their maximum punishment." *Id*. at 589, 122 S. Ct. at 2432. The Court reversed our decision in *State v. Ring*, 200 Ariz. 267, 25 P.3d 1139 (2001) (*Ring I*), and remanded for further proceedings consistent with its decision. *Ring II*, 536 U.S. at 609, 122 S. Ct. at 2443.

¶3 Following the Supreme Court's *Ring II* decision, we consolidated all death penalty cases in which this court had not yet issued a direct appeal mandate to determine whether *Ring II* requires this court to reverse or vacate the defendants' death sentences. In *State v. Ring*, 204 Ariz. 534, ___ ¶ 53, 65 P.3d 915, 936 (2003) (*Ring III*), we held that we will examine a death sentence imposed under Arizona's superseded capital sentencing statutes for harmless error.

¶4     Cropper pled guilty to first degree murder, dangerous or deadly assault by a prisoner, and three counts of promoting prison contraband for the murder of Arizona Department of Corrections (ADOC) Officer Brent Lumley.  Officer Lumley was murdered after he and a fellow corrections officer, Deborah Landsperger, searched Cropper's cell at the Perryville State Prison.[1]

¶5     After entering judgment, the trial judge conducted a sentencing hearing to determine whether any aggravating or mitigating circumstances existed.  *See* A.R.S. § 13-703 (Supp. 1999), *amended by* 2002 Ariz. Sess. Laws, 5th Spec. Sess., ch. 1, § 1.  The judge found three aggravating circumstances and two mitigating circumstances.  He found, beyond a reasonable doubt, that Cropper had been convicted of a prior serious offense, A.R.S. section 13-703.F.2 (Supp. 2002), that he murdered Officer Lumley in an especially cruel manner, A.R.S. section 13-703.F.6, and that he committed the murder while in the custody of ADOC, A.R.S. section 13-703.F.7.

¶6     Cropper presented six mitigating circumstances to the court.  The judge accepted two non-statutory mitigators: that Cropper has a strong relationship with certain family members and that he expressed remorse for the killing.  He rejected four: that

---

[1]     For a more thorough description of the facts, see *State v. Cropper*, 204 Ariz. ___, 68 P.3d 407 (2003).

3

Cropper's capacity to appreciate the wrongfulness of his conduct and his ability to conform his conduct to the requirements of the law were significantly impaired, A.R.S. section 13-703.G.1; that Cropper grew up in a dysfunctional family; that he has a substance abuse problem; and that his psychological background and dysfunctional family contributed to his behavior. The judge concluded that the established mitigating circumstances were not sufficiently substantial to call for leniency and sentenced Cropper to death.

¶7       We affirmed Cropper's convictions on direct appeal and ordered supplemental briefing on the issue of whether the Sixth Amendment *Ring II* error was harmless. *Cropper*, 204 Ariz. at ___ ¶ 25, 68 P.3d at 412. We will find constitutional error harmless if we conclude, beyond a reasonable doubt, that the error did not contribute to or affect the sentencing outcome. *Ring III*, 204 Ariz. at ___, ¶¶ 103-04, 65 P.3d at 946. If we conclude that reasonable doubt exists, however, then the error is prejudicial and the case must be remanded for a new sentencing hearing under Arizona's amended capital sentencing statutes. *Id.* at ___, ¶ 102, 65 P.3d at 946.

### III.

### A.

¶8       Under Arizona law, an aggravating circumstance exists when "[t]he defendant was previously convicted of a serious

4

offense, whether preparatory or completed." A.R.S. § 13-703.F.2. The trial judge found that Cropper had been previously convicted of aggravated assault. *Cropper*, 204 Ariz. at ___ ¶¶ 11-12, 68 P.3d at 409.

¶9 In *Ring III*, we held "that the Sixth Amendment does not require a jury to determine prior convictions under sections 13-703.F.1 and F.2." 204 Ariz. at ___ ¶ 55, 65 P.3d at 937. Accordingly, we will not disturb the trial judge's finding that the prior serious conviction aggravating circumstance exists.

## B.

¶10 An aggravating circumstance exists when the defendant commits first degree murder while in the custody of ADOC. A.R.S. § 13-703.F.7. Because Cropper concedes this aggravating circumstance, we recognize it as established.[2] *See Ring III*, 204 Ariz. at ___ ¶ 93, 65 P.2d at 944.

## C.

¶11 Another aggravating circumstance exists when "[t]he defendant committed the offense in an especially heinous, cruel or

_____

[2] Although Cropper concedes that the in-custody aggravating circumstance exists, the F.7 aggravator also can be implicit in a verdict. *Cf. Ring III*, 204 Ariz. at ___ ¶ 83, 65 P.3d at 942 (holding that the age of the victim aggravating circumstance can be implicit in a jury verdict where the defendant is simultaneously convicted of a relevant-age-dependent crime). When a jury simultaneously convicts a defendant of first degree murder and deadly or dangerous assault by a prisoner, the F.7 aggravator is implicitly established even though the aggravator itself was not found by a jury.

5

depraved manner." A.R.S. § 13-703.F.6. The State must prove at least one of the three components to establish this aggravator. *State v. Jeffers*, 135 Ariz. 404, 429, 661 P.2d 1105, 1130 (1983).

¶12 The trial judge found that Cropper committed the murder in an especially cruel manner. In *State v. Knapp*, we defined "cruel" as "disposed to inflict pain esp. in a wanton, insensate or vindictive manner: sadistic." 114 Ariz. 531, 543, 562 P.2d 704, 716 (1977) (quoting Webster's Third New Int'l Dictionary). Physical cruelty exists when "the victim consciously experienced physical or mental pain prior to death, and the defendant knew or should have known that suffering would occur." *State v. Trostle,* 191 Ariz. 4, 18, 951 P.2d 869, 883 (1997) (citations omitted).

¶13 At the aggravation/mitigation hearing, the State presented testimony from Dr. Philip Keen, Chief Medical Examiner for Maricopa and Yavapai Counties. Dr. Keen testified that Officer Lumley was attacked from behind and stabbed six times. The knife entered his neck and chest; the most critical entry penetrated one of his lungs. According to Dr. Keen, Officer Lumley lived at least five minutes after the stab wounds were inflicted and remained conscious for at least three of those minutes. Dr. Keen further testified that the cuts severed a group of nerves in Lumley's body. The nerve damage, according to Dr. Keen, would have caused suffering. When asked if the injury would have caused a substantial amount of pain, Dr. Keen responded, "There would be

6

some pain.  Substantial?  Everybody . . . has a different pain threshold and so I don't know how to quantitate the individual pain."  The defense presented no credible rebuttal evidence.

¶14    In *State v. Soto-Fong*, we clarified the meaning of an *especially* cruel murder.  187 Ariz. 186, 203-04, 928 P.2d 610, 627-28 (1996).  We held that the State had failed to produce sufficient evidence to support the trial court's finding of physical cruelty because the finding was "based on the assumption that a murder is especially cruel whenever the victim remains conscious for some moments after being shot."  *Id.* at 203, 928 P.2d at 627.  Although proving the aggravator does not depend on satisfying "a bright-line, arbitrary temporal rule," we cautioned that finding a murder especially cruel within the meaning of section 13-703.F.6 based on such an assumption would frustrate the narrowing purpose of the aggravating circumstance.  *Id.* at 204, 928 P.2d at 628.  Instead, we concluded, "where shots, stabbings, or blows are inflicted in quick succession, one of them leading rapidly to unconsciousness, a finding of cruelty, *without any additional supporting evidence*, is not appropriate."  *Id.*

¶15    Our decision in *Soto-Fong* developed our holding in *State v. Gretzler*, 135 Ariz. 42, 659 P.2d 1 (1983), in which we had distinguished between two groups of cases involving the cruelty aggravator.  The first group consisted of two cases in which we sustained an F.6 finding.  In *Knapp*, we upheld the trial court's

7

finding where the "defendant burned to death his two infant daughters." *Id.* at 51, 659 P.2d at 10, *quoted in Soto-Fong*, 187 Ariz. at 203, 928 P.2d at 627. Similarly, in *State v. Mata*, we upheld the finding where "the killers performed successive rapes and severe beatings on the victim prior to murdering her." *Id.*, *quoted in Soto-Fong*, 187 Ariz. at 203, 928 P.2d at 627.

¶16 The second *Gretzler* group consisted of three cases in which we reversed or vacated the trial court's finding of especial cruelty because the State failed to sufficiently establish physical suffering. In *State v. Ortiz*, 131 Ariz. 195, 639 P.2d 1020 (1981), and *State v. Ceja*, 126 Ariz. 35, 612 P.2d 491 (1980), we overturned the trial judge's finding of cruelty because the evidence of the victim's suffering was inconclusive. *Gretzler*, 135 Ariz. at 51, 659 P.2d at 10, *cited by Soto-Fong*, 187 Ariz. at 203, 928 P.2d at 627. In *State v. Bishop*, 127 Ariz. 531, 622 P.2d 478 (1980), and *State v. Clark*, 126 Ariz. 428, 616 P.2d 888 (1980), we held that suffering could not have occurred because the evidence indicated the victims died immediately after the attack. *Gretzler*, 135 Ariz. at 51, 659 P.2d at 10, *cited by Soto-Fong*, 187 Ariz. at 203, 928 P.2d at 627.

¶17 The manner in which Officer Lumley died is neither as patently cruel as were the deaths in *Knapp* and *Mata* nor as swift as those in *Bishop* and *Clark*. Because Officer Lumley remained conscious for a relatively short time, however, the State bore the

8

burden of providing some additional supporting evidence of cruelty. *Soto-Fong*, 187 Ariz. at 204, 928 P.2d at 628. On this record, we cannot hold that all reasonable juries would find the especially cruel aggravating circumstance established beyond a reasonable doubt. *Cf. State v. Jones*, ___ Ariz. ___, ___ ¶ 14, ___ P.3d ___, ___ (2003) (holding that a jury could conclude that the victim lost consciousness immediately following the first assault); *State v. Cañez*, ___ Ariz. ___, ¶ 15, ___ P.3d ___, ___ (2003) (same). Therefore, Cropper is entitled to a jury finding on this aggravating circumstance.

## IV.

¶18   To sentence a defendant to death, not only must the trier of fact find, beyond a reasonable doubt, the existence of one or more aggravating circumstances, but it also must consider whether any mitigating circumstances are sufficiently substantial to call for leniency. *See* A.R.S. § 13-703.E (Supp. 2002). We may "affirm a capital sentence only if we conclude, beyond a reasonable doubt, that no rational trier of fact would determine that the mitigating circumstances were sufficiently substantial to call for leniency." *Ring III*, 204 Ariz. at ___ ¶ 104, 65 P.3d at 946.

¶19   Cropper offered several mitigating circumstances for the court's consideration. The trial judge found only two mitigators, and he did not find their weight sufficiently substantial to call for leniency.

9

¶20     The defense's main theory in mitigation was that the cell search caused Cropper to relive childhood trauma, thereby forcing him into a dissociative state. According to the defense, Cropper, as a child, was severely abused by his stepmother. Cropper's father often witnessed the abuse and did not intervene on behalf of his son. These past psychological traumatic experiences allegedly matched the cell-search event closely enough to trigger Cropper's reaction and subsequent conduct. Therefore, Cropper became verbally confrontational with Officer Landsperger because he believed that she, like his stepmother, did not respect him and his property. While it was she who allegedly disrespected his property, Cropper held Lumley ultimately responsible because he, like his father, should have intervened.

¶21     The defense presented the testimony of three experts, including one neurologist, to support its theory. One of the defense experts, Dr. Susan Parrish, was questioned about Cropper's dissociative state and about why Cropper would attack Officer Lumley rather than Officer Landsperger. Dr. Parrish answered:

> Leroy was in a dissociative state and was flashing back to what happened in his childhood. Because it's his father that he has the hatred for. He, he doesn't--he does not blame his stepmother. I mean in his, in his view, you know, there's a principle here. This is a man, you know, a father with a--an architect father here is standing by and allowing an injustice, that the person doing it is not recognizing because they have their own, own set of problems. So it's the person who allows this to go on and knows that it's wrong that is the focus of his anger.

. . . .

> [E]arly on he felt very close to his father. And it's possible that that sense of closeness that his father . . . from his standpoint betrayed, is what created the foundation for such hate towards a male authority figure. And, and sort of dismissing the role of the female.

¶22    The State presented rebuttal evidence in the form of testimony by psychologist Dr. Jess Miller. Dr. Miller evaluated Cropper and concluded that he did not commit the murders in an "altered state," as theorized by Dr. Parrish. Instead, in Dr. Miller's opinion, Cropper suffers from a sociopathic personality disorder. Dr. Miller concluded that Cropper manipulated the psychological evaluations.

¶23    The judge rejected this mitigating circumstance because he failed to find a causal nexus between Cropper's childhood experiences and Officer Lumley's murder. After reviewing the trial record, we cannot conclude, beyond a reasonable doubt, that a jury would do the same. Dr. Parrish testified both that Cropper committed the murder while in a dissociative state and that his childhood trauma caused him to enter that state. Whether or not this theory is credible and, if so, whether a causal nexus exists between Cropper's early life experiences and the murder are questions of facts that require judging the credibility and weight of the defense's mitigation evidence and the State's rebuttal. We cannot conclude, beyond a reasonable doubt, that a jury would not have weighed differently the established mitigating circumstances

11

or found additional mitigating circumstances.

## V.

¶24      For the foregoing reasons, we vacate Cropper's death sentence and remand for resentencing under A.R.S. sections 13-703 and 13-703.01 (Supp. 2002).


_____
                              Ruth V. McGregor, Vice Chief Justice

CONCURRING:


_____
Rebecca White Berch, Justice


_____
Michael D. Ryan, Justice


* Justice Hurwitz took no part in the consideration or decision of this case.

**J O N E S**, C.J., concurring in part, dissenting in part:

¶25      I concur in the result, but  dissent from the majority's conclusion that harmless error analysis is appropriate where sentencing determinations are made by the trial judge in the absence of the jury.  The right to trial by an impartial jury is fundamental.  The sentencing phase is, of itself, a life or death matter.  Where a judge, not a jury, determines all questions pertaining to sentencing, I believe a violation of the Sixth

12

Amendment to the Constitution of the United States has occurred. In the aftermath of the Supreme Court's decision in *Ring v. Arizona,* 536 U.S. 584, 122 S. Ct. 2428 (2002) (*Ring II*), the absence of the jury in the sentencing phase of a capital trial necessarily amounts to structural error. I would remand the case for resentencing, simply on the basis of the Sixth Amendment violation. *See State v. Ring,* ____ Ariz. ____, ____ ¶¶ 105-14, 65 P.3d 915, 946-48 (2003) (Feldman J., concurring in part, dissenting in part) (*Ring III*).

_____

Charles E. Jones, Chief Justice

13