NOTICE: NOT FOR PUBLICATION.
UNDER ARIZ. R. SUP. CT. 111(c), THIS DECISION DOES NOT CREATE LEGAL PRECEDENT
AND MAY NOT BE CITED EXCEPT AS AUTHORIZED.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

STATE OF ARIZONA, *Appellee*,

*v.*

JIMMY BURUATO, *Appellant*

No. 1 CA-CR 12-0593
FILED 5-13-2014

Appeal from the Superior Court in Maricopa County
No.  CR 2010-123480-001
The Honorable Robert E. Miles, Judge

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Alice Jones
*Counsel for Appellee*

The Nolan Law Firm, P.L.L.C., Mesa
By Cari McConeghy Nolan
*Counsel for Appellant*

---

**MEMORANDUM DECISION**

Judge Maurice Portley delivered the decision of the Court, in which Presiding Judge Donn Kessler and Judge Patricia K. Norris joined.

---

**P O R T L E Y,** Judge:

¶1          Jimmy Buruato appeals his convictions on four counts of burglary in the third degree and the resulting sentences. For reasons that follow, we affirm.

## FACTS[1] AND PROCEDURAL HISTORY

¶2          Two pickup trucks were burglarized in a Scottsdale parking garage on April 30, 2010. Items were taken from each truck after the lock cylinder on the driver's door had been "punched." A surveillance camera video showed a Chevrolet Tahoe pulling up to one of the trucks for about ten minutes and leaving. The video also showed an unidentified person exiting the Tahoe while stopped next to one of the trucks.

¶3          Approximately twenty minutes earlier, a full-sized van was burglarized while parked in the nearby CrackerJax parking lot. The video from the surveillance cameras in that parking lot showed a Chevrolet Tahoe driving around the lot and pulling up next to the van three times. The video showed that a man got out of the Tahoe and removed the Tahoe's license plate. The video also showed that the third time the Tahoe parked next to the van, a man was shown entering the van through the driver's door and later returning to the Tahoe and driving away.

¶4          The police were able to read the Tahoe license plate from the CrackerJax high-definition surveillance cameras before it was removed. A records check revealed that Buruato was the registered owner of the Tahoe. When comparing a photograph of Buruato to the man in the CrackerJax video, the case agent found that the man in the video looked similar to Buruato.

---

[1] We view the facts in the light most favorable to sustaining the jury's verdict. *State v. Cropper*, 205 Ariz. 181, 182, ¶ 2, 68 P.3d 407, 408 (2003), *supplemented by* 206 Ariz. 153, 76 P.3d 424 (2003).

¶5          The police began surveillance on Buruato.  On May 5, 2010, the police observed him and his wife leave their home in a Tahoe with the same license plate number as the one in the surveillance video from CrackerJax.  They followed the Tahoe to various retail businesses in Phoenix and Tempe, and watched as the Tahoe was parked and Buruato and his wife got out of the Tahoe on several occasions.  The police also observed Buruato peering into vehicles parked near his Tahoe.

¶6          The police followed Buruato and his wife, and they eventually drove to an Ahwatukee Foothills golf course and parked next to a telephone company van in the parking lot.  The police saw Buruato get out of the Tahoe, punch the lock of the passenger side door with a large screw driver, enter the van and remove items.  Buruato then returned to the Tahoe, drove through the parking lot and twice stopped next to other vehicles but only looked inside those vehicles.  Buruato then drove his wife home in the Tahoe.

¶7          The police arrested Buruato later that day at an auto body shop.  After obtaining a search warrant, the police found items in the Tahoe and the Buruatos' house belonging to the victims of the four burgled vehicles.

¶8          Buruato was charged with four counts of burglary in the third degree, each a class 4 felony.[2]  The State further alleged that Buruato had three prior historical felony convictions and that multiple aggravating circumstances existed.

¶9          Prior to trial, the trial court granted Buruato's motion to sever Count 4, the count concerning the burglary on May 5, from Counts 1 through 3.  The State, however, subsequently moved to use the evidence relating to Courts 1 through 3 at the trial on Court 4 and vice versa pursuant to Arizona Rule of Evidence ("Rule") 404(b).  Following a hearing, the court granted the State's motions because the evidence pertaining to Counts 1 through 3 and Count 4 would be cross-admissible.  In response to the ruling, Buruato requested that the court join the four counts in one trial in the interest of presenting his defense and judicial economy.  His request was granted.

---

[2] Buruato was also charged with misconduct involving weapons (prohibited possessor) because a weapon was found in the Tahoe when he was arrested.  The charge was severed from the others and the State had it dismissed after Buruato was convicted for the burglaries.

¶10      At trial, Buruato stipulated that the four vehicles had been burglarized, but presented an alibi defense and defended himself solely on the basis that he was not the person who committed the burglaries. The jury convicted Buruato on all four burglaries. The jury also found that the State proved its alleged aggravating circumstances. The trial court subsequently held a presentence hearing and found that Buruato had three prior historical felony convictions, and sentenced Buruato as a repetitive offender to concurrent and consecutive presumptive prison terms totaling 13.5 years. Buruato timely appealed.

## DISCUSSION

### A.      Joinder of Counts

¶11      Buruato first argues that the trial court erred by rejoining the four burglary counts after initially severing Count 4 from Counts 1 through 3. We disagree.

¶12      After the trial court severed Count 4 from the other burglary counts, the State subsequently moved to use the facts relating to Count 4 in the trial on the other counts and vice versa pursuant to Rule 404(b). When the court granted the State's motion, and faced with the ruling, Buruato requested that the court rejoin all four counts in one trial. The State argues that Buruato invited the error and should not be allowed to raise it on appeal. "By the rule of invited error, one who deliberately leads the court to take certain action may not upon appeal assign that action as error." *Schlecht v. Schiel*, 76 Ariz. 214, 220, 262 P.2d 252, 256 (1953), *abrogated in part on other grounds as recognized in A Tumbling-T Ranches v. Paloma Inv. Ltd. P'ship*, 197 Ariz. 545, 552, ¶ 23, 5 P.3d 259, 266 (App. 2000); *accord State v. Lucero*, 223 Ariz. 129, 138, ¶ 31, 220 P.3d 249, 258 (App. 2009) ("[I]f the party complaining on appeal affirmatively and independently initiated the error, he . . . [is] barred from raising the error on appeal."). Buruato only requested the four counts be rejoined for trial after the court granted the State's Rule 404(b) motion. As a result, even though we might be able to invoke the invited doctrine error, we will review the merits of the argument.

¶13      Arizona Rule of Criminal Procedure ("Rule") 13 governs the joinder and severance of offenses. Rule 13.3(a)(1) provides that charges that have "the same or similar character" can be charged together. Ariz. R. Crim. P. 13.3(a)(1). Further, when similar offenses are pending against a defendant but have not been joined for one trial, the trial court is authorized to join them "in whole or in part . . . provided that the ends of

justice will not be defeated thereby." Ariz. R. Crim. P. 13.3(c). Thus, the four burglary charges were properly joined in the original indictment pursuant to Rule 13.3, subject to the severance provisions of Rule 13.4.

¶14 Rule 13.4 provides that when two or more offenses have been joined only by virtue of Rule 13.3(a)(1), the defendant is entitled to severance as a matter of right "unless evidence of the other offense or offenses would be admissible under applicable rules of evidence if the offenses were tried separately." Ariz. R. Crim. P. 13.4(b); *accord State v. Prion*, 203 Ariz. 157, 162, ¶ 30, 52 P.3d 189, 194 (2002). Here, at Buruato's request, Count 4 was severed from Counts 1 through 3. However, after considering the briefing and argument on State's Rule 404(b) motion, the court ruled that the evidence of the offenses alleged in Counts 1 through 3 would be admissible at the trial on Count 4 and vice versa under Rule 404(b). We review the evidentiary ruling for abuse of discretion. *State v. Villalobos*, 225 Ariz. 74, 80, ¶ 18, 235 P.3d 227, 233 (2010).

¶15 Buruato argues that the trial court erred by granting the State's motion in limine that the evidence of the offenses alleged in Counts 1 through 3 and Count 4 was cross-admissible under Rule 404(b). He contends the evidence would only serve to unfairly prejudice him in the eyes of the jury as a "bad person" or a person who "has a propensity for committing crimes." Although Rule 404(b) precludes evidence of other crimes, wrongs or acts to prove the character of a person, it explicitly provides such evidence may be admissible "for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Other act evidence is admissible if the other act is shown by clear and convincing evidence and (1) the evidence is offered for a proper purpose; (2) the evidence is relevant; (3) the evidence is not unfairly prejudicial; and (4) the trial court gives an appropriate limiting instruction upon request. *State v. Hargrave*, 225 Ariz. 1, 8, ¶ 10, 234 P.3d 569, 576 (2010); *State v. Lee*, 189 Ariz. 590, 599, 944 P.2d 1204, 1213 (1997) (noting that any error "will not justify reversal if the evidence of other crimes would have been admissible at separate trials under Rule 404(b)").

¶16 The court ruled that evidence of the vehicle burglaries on April 30 and May 5 was cross-admissible to prove identity, a proper non-character purpose. The identity exception to Rule 404(b) applies if identity is in issue and "the pattern and characteristics of the crimes . . . [are] so unusual and distinctive as to be like a signature." *State v. Stuard*, 176 Ariz. 589, 597, 863 P.2d 881, 889 (1993) (citation omitted) (internal quotation marks omitted); *accord State v. Jackson*, 186 Ariz. 20, 27,

918 P.2d 1038, 1045 (1996) ("[T]he modus operandi of and the circumstances surrounding the two crimes must be sufficiently similar as to be like a signature." (citation omitted) (internal quotation marks omitted)). "While identity in every particular is not required, there must be similarities between the offenses in those important aspects 'when normally there could be expected to be found differences.'" *State v. Roscoe*, 145 Ariz. 212, 216, 700 P.2d 1312, 1317 (1984) (quoting *State v. Jackson*, 124 Ariz. 202, 204, 603 P.2d 94, 96 (1979)).

¶17        Buruato's defense to all of the charges was misidentification. He claimed that he did not commit the offenses and presented an alibi defense with various friends and family members testifying that he was elsewhere when the burglaries were committed. Thus, a proper non-character purpose for cross-admissibility of the evidence would be to establish the identity of the perpetrator of the offenses.

¶18        Second, the evidence of the burglaries on one date was relevant to proving the identity of the person who committed the offense or offenses on the other date. The offenses on both dates involved highly similar and distinctive patterns and characteristics. In all four burglaries, the burglar used a Chevrolet Tahoe and parked it next to the vehicle to be burglarized. Entry was then gained through the identical means of "punching" the vehicle door lock. Further, the burglaries were committed in parking areas with multiple vehicles that would tend to minimize the perpetrator from being viewed as out of place if any passerby happened to see him next to the victim's vehicle. In addition, the vehicles selected for burglaries were large trucks and vans, which served to hide the perpetrator's activities from the public. Because the police witnessed Buruato commit the burglary on May 5, the evidence of that offense was relevant to establishing that he was also the person who committed the burglaries on April 30, given the essentially identical nature of those earlier vehicle burglaries. *See* Morris K. Udall et al., *Arizona Practice: Law of Evidence* § 84, at 183-84 (3d ed. 1991) ("If the identity of the accused is in issue, and if the behavior of the accused both on the occasion charged and on some other occasion is sufficiently distinctive, then proof that the accused was involved on the other occasion tends to prove his involvement in the crime charged."); *see also* Ariz. R. Evid. 401 (stating evidence is relevant when it has "any tendency" to make a material fact "more or less probable than it would be without the evidence").

¶19        The evidence of the burglaries on April 30 was likewise cross-admissible to establish the identity of the perpetrator who committed the burglary on May 5. Notwithstanding that multiple police

officers identified Buruato as the person who they saw commit that burglary, Buruato's position was that he was not the person the police followed and watched break into the van that day. Additionally, he pointed out that there were no pictures or video taken by the police during their surveillance on that date to support their identification. The video from surveillance cameras of the burglaries on April 30, which constituted independent visual evidence of the Chevrolet Tahoe and the person who used that vehicle to commit those burglaries, would tend to establish that Buruato was the person who committed those burglaries and therefore corroborate the officers' testimony that he was the person they saw commit the similar burglary in the same distinctive manner on May 5.

¶20        Third, the trial court acted within its broad discretion in ruling that the probative value of the evidence of the other burglaries was not substantially outweighed by the danger of unfair prejudice. *See State v. Harrison*, 195 Ariz. 28, 33, ¶ 21, 985 P.2d 513, 518 (App. 1998) ("The trial court is in the best position to balance the probative value of challenged evidence against its potential for unfair prejudice. Thus, it has broad discretion in deciding the admissibility."), *aff'd*, 195 Ariz. 1, 985 P.2d 486 (1999). Because identity was the central issue at trial, the court could reasonably conclude that the probative value of the evidence of the other burglaries on this issue was not substantially outweighed by any potential risk of unfair prejudice. *See State v. Starks*, 122 Ariz. 531, 534, 596 P.2d 366, 369 (1979) (holding no error by trial court in not precluding evidence as unfairly prejudicial where evidence went directly to central issue). Moreover, the court instructed the jury to consider the evidence as it related to each count separately, thereby minimizing any prejudice. *See State v. Day*, 148 Ariz. 490, 494, 715 P.2d 743, 747 (1986), *abrogated on other grounds by State v. Ives*, 187 Ariz. 102, 927 P.2d 762 (1996).

¶21        Finally, the trial court ruled that a limiting instruction on the appropriate use of other act evidence would be available. However, because the four burglary counts were tried in one trial and the jury had to determine whether the State proved each element of each charge beyond a reasonable doubt, there was no need for a separate limiting instruction. Consequently, the court did not abuse its discretion by ruling the facts relating to all the burglaries were cross-admissible under Rule 404(b) or by rejoining the charges for one trial.

### B. Admission of Other Act Evidence

**¶22** Buruato next argues that the trial court erred in admitting evidence of "other acts" in violation of Rule 404(b). We disagree.

**¶23** First, because all counts were joined at trial there was no separate other act evidence admitted at trial. The evidence of the four burglaries was no longer "other act" evidence, but instead evidence of the charged offenses being presented to the jury. *See* Ariz. R. Evid. 404(b) (precluding "evidence of *other* crimes, wrongs or acts" (emphasis added)).

**¶24** Second, even if the Rule 404(b) ruling caused Buruato to request one trial for tactical or strategic purposes, as noted above, *supra* ¶¶ 15-21, our review of the record does not reveal that the Rule 404(b) ruling constituted an abuse of discretion. Consequently, the trial court did not err.

### C. Witness in Jail Clothing

**¶25** Buruato also argues that the trial court erred by permitting a defense witness to testify while wearing jail clothing. Buruato asserts that he was prejudiced because having the witness testify in jail clothing would "improperly affect the credibility the jury gave to the witness." Although there was some discussion prior to trial about trying to get the witness, who was in custody on an unrelated matter, to appear in civilian clothing, Buruato did not raise an objection when the witness testified at trial in jail clothing. Absent an objection, our review is limited to fundamental error. *State v. Henderson*, 210 Ariz. 561, 567, ¶ 19, 115 P.3d 601, 607 (2005).

**¶26** Buruato filed a motion in limine which, among other things, sought to ensure that the witness did not reveal his pending charges, but did not raise the issue of having the witness dress out in civilian clothing. During the discussion about the motion in limine with the court before the start of the second day of trial, Buruato stated that "as far as whether or not the detention officers will dress him out, I'm not sure that's something we're checking on" and "[i]f I can't get him dressed out, he's going to be in the jail stripes, then obviously there's nothing I can do about that." Moreover, when the witness appeared at trial in jail clothing, Buruato never objected or sought time to get him into civilian clothing.

**¶27** There is nothing in the record that suggests that Buruato objected to the witness appearing in jail clothing. Moreover, although Arizona has not addressed the issue, other jurisdictions have concluded

that absent an objection, reversible error does not occur when a defense witness testifies in jail clothing. *See, e.g., Cherry v. State*, 496 S.E.2d 764, 767 (Ga. App. 1998) (noting that defendant failed to object to witness wearing prison attire "on the grounds that the dress of the witnesses placed *his* character in evidence"); *State v. Abraham*, 451 S.E.2d 131, 141 (N.C. 1994) (noting that defendant failed to object to witnesses wearing prison attire and shackles); *see also Hightower v. State*, 154 P.3d 639, 642 (Nev. 2007) ("The burden is on the defendant to timely request that the incarcerated witness be permitted to testify in civilian clothing, and the failure to make such a request is deemed a waiver of the right."). Given the fact that Buruato did not request his witness to be in civilian clothing during his testimony and did not object when the witness appeared in jail clothing, the court did not err, much less commit prejudicial fundamental error, by not addressing the issue.

### D.     *Testimony about Surveillance Video*

¶28     Prior to trial, Buruato moved to preclude the State from eliciting testimony from investigators that he was the person in the surveillance videos of the April 30 burglaries. Buruato argued that such opinion testimony would be improper because it would constitute testimony on the ultimate issue of guilt. The court granted Buruato's motion in limine, ruling that the State's witnesses could not give their opinion that the person in the videos was in fact Buruato. The court further ruled, however, that investigators were permitted to testify that they started watching Buruato and later arrested him because they thought he looked like the person in the surveillance videos.

¶29     At trial, the case agent heading the burglary investigation testified that after running the records check on the license plate seen in the CrackerJax surveillance video, he obtained a certified photograph of Buruato and "looked at the surveillance image of the person in the Chevy Tahoe at CrackerJax, and [] found that person looked similar to Mr. Buruato." He also testified about a still photograph from the surveillance video: "I look at it and I see the Hispanic male looking just like Mr. Buruato, and the characteristics I see in this are consistent with Mr. Buruato from the day that I did the investigation." Buruato argues that the trial court erred by permitting this testimony because the question of whether he was the person in the surveillance video "was clearly an ultimate issue of fact for the jury." We review a trial court's decision on the admissibility of evidence for abuse of discretion. *State v. Amaya–Ruiz*, 166 Ariz. 152, 167, 800 P.2d 1260, 1275 (1990).

¶30         The Arizona Rules of Evidence permit opinion testimony on "ultimate issues." Ariz. R. Evid. 704(a); *State v. Williams*, 132 Ariz. 153, 160, 644 P.2d 889, 896 (1982); *see also State v. Doerr*, 193 Ariz. 56, 63, ¶ 26, 969 P.2d 1168, 1175 (1998) ("Lay witnesses may give opinion testimony, even as to the ultimate issue, when it is 'rationally based on the perception of the witness and . . . helpful to a clear understanding of the witness' testimony or the determination of a fact in issue.'" (quoting Ariz. R. Evid. 701)). The one exception in a criminal case, however, is that a witness "must not state an opinion about whether the defendant did or did not have a mental state or condition that constitutes an element of the crime charged or of a defense." Ariz. R. Evid. 704(b). In addition, although a witness may give an opinion on an ultimate issue, a witness is not permitted to tell the jury how to decide a case. *State v. Sosnowicz*, 229 Ariz. 90, 95, 97, ¶¶ 17, 25, 270 P.3d 917, 922, 924 (App. 2012).

¶31         Here, the challenged testimony did not tell the jury how to decide the case or even that Buruato was in fact the person depicted in the surveillance video. The case agent testified that he arranged to have Buruato watched because his picture "looked similar" to the person in the surveillance video and that Buruato was arrested because the police believed he was the person who committed the burglaries. The issue of whether Buruato was in fact the person in the surveillance video was left entirely to the jury's decision. There was no abuse of discretion by the trial court in admitting the case agent's testimony concerning the surveillance video.

### E.     Testimony about "Certified" Photographs

¶32         Buruato also argues that the court erred by permitting testimony that investigators viewed "certified" photographs of him. He contends the references to "certified" photographs constituted improper vouching and was unfairly prejudicial. Although Buruato claims on appeal that he objected to the State's witnesses referring to "certified" photographs, the discussion at trial reflects Buruato was "fine" with the term "certified photo" to show the distinction between his booking photo and an MVD photo. Because he did not object to the use of the term "certified photo," our review is limited to fundamental error. *Henderson*, 210 Ariz. at 567, ¶ 19, 115 P.3d at 607.

¶33         The use of the term "certified photo" by investigators was neither improper vouching nor unfairly prejudicial. Impermissible vouching takes two forms: "(1) where the prosecutor places the prestige of the government behind its witness; [and] (2) where the prosecutor

suggests that information not presented to the jury supports the witness's testimony." *State v. King*, 180 Ariz. 268, 276–77, 883 P.2d 1024, 1032–33 (1994) (citation omitted) (internal quotation marks omitted). The testimony by the State's witnesses regarding viewing "certified" photographs of Buruato does not implicate either form of vouching. Buruato agreed that the State's witnesses would refer to the photographs of Buruato they viewed as "certified" simply to avoid informing the jury that one of the photographs was a booking photograph.

¶34 Nor did the use of the term "certified photo" result in any unfair prejudice. There is nothing in the record, like a jury question about the term, that would begin to suggest that the jury was concerned with the term or its meaning, or thought that the term meant something other than the photographs were official or authenticated photographs. And, there is nothing in the record to suggest that the references to viewing "certified" photographs increased the witnesses' credibility. Consequently, we find no error, much less prejudicial fundamental error, by the mutual agreement to have the witnesses use the term "certified photo" when referring to photographs of Buruato.

### F. *Pecuniary Gain as Aggravating Factor*

¶35 Finally, Buruato contends the trial court erred by considering an improper aggravating factor when imposing the sentence. Because Buruato failed to raise this issue below, our review is again limited to fundamental error. *Henderson*, 210 Ariz. at 567, ¶ 19, 115 P.3d at 607. We generally review a sentence imposed by the trial court for abuse of discretion, but whether a given aggravating factor may be used in sentencing presents a question of law we review de novo. *State v. Tschilar*, 200 Ariz. 427, 435, ¶ 32, 27 P.3d 331, 339 (App. 2001).

¶36 Buruato argues the court should not have considered the fact he committed the burglaries for pecuniary gain as an aggravating factor because he "could not have committed the crimes of burglary as alleged, without having received items of pecuniary value." Even if pecuniary gain was an element of the offenses, the court would not be precluded from using it as an aggravating factor. An element of an offense may also serve as a sentencing aggravator when it is a specifically enumerated aggravating circumstance in the Arizona sentencing scheme. *State v. Lara*, 171 Ariz. 282, 284-85, 830 P.2d 803, 805-06 (1992). Commission of an offense for pecuniary gain is specifically enumerated as an aggravating

circumstance in Arizona Revised Statutes section 13-701(D)(6).[3]   As a result, the court did not err by considering pecuniary gain as an aggravating circumstance when imposing the sentence.  *See State v. Greene*, 192 Ariz. 431, 444, ¶ 62, 967 P.2d 106, 119 (1998).

## CONCLUSION

**¶37**          For the above reasons, we affirm Buruato's convictions and sentences.



Ruth A. Willingham · Clerk of the Court
FILED: MJT

---

[3] We cite to the current version of the statute absent changes material to this decision.